UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:14-cv-24245-RNS

ISMAEL RODRIGUEZ DIAZ, et al.,

    Plaintiffs,

v.

AMERICAN SALES AND MANAGEMENT
ORGANIZATION, LLC, a Florida limited
liability company, EULEN AMERICA, INC.,
and LIVAN ACOSTA,

    Defendants.
_____/

## DEFENDANTS AMERICAN SALES AND MANAGEMENT ORGANIZATION, LLC, EULEN AMERICA, INC., AND LIVAN ACOSTA'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW AS TO CLAIM ASSERTED BY PLAINTIFFS PEDRO LANTIGUA GOMEZ AND PEDRO GALINDO GUTIEREZ

COME NOW Defendants American Sales and Management Organization, LLC, Eulen America, Inc., and Livan Acosta, by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56(b) and United States District Court for the Southern District of Florida Local Rule 56.1, moves this Court for entry of an Order granting summary judgment in favor of Defendants on Plaintiffs Pedro Lantigua Gomez' and Pedro Galindo Gutierez' (jointly "Plaintiffs") Complaint, and, in support thereof, state as follow:

## INTRODUCTION

Plaintiff Pedro Galindo Gutierez (hereinafter "Galindo") began working for Eulen America, Inc. (hereinafter "Eulen") in October of 2012 and at times material served as a cabin cleaning agent in the company's cabin service department.  *See,* Statement of Material Facts ¶ 1. Plaintiff Pedro Lantigua Gomez (hereinafter "Lantigua") began working for Eulen in October of 2012 and at times material served as a crew chief in the company's cabin service department. *See,* Statement of Material Facts ¶ 2.  In mid-June of 2014, Plaintiffs were terminated due to unsatisfactory job performance and violations of company policy.  *See,* Statement of Material Facts ¶ 8.  Specifically, Galindo was terminated due to his failure to perform a proper and thorough security search of an aircraft, following a prior incident of an unsatisfactory security

search of a plane.  *See,* Statement of Material Facts ¶¶ 9-12.  Lantigua was terminated due to his failure to check his crew member's work and notice that a proper and thorough security search of an aircraft had not been performed, following a prior incident of an unsatisfactory security search of a plane.  *Id.*

Despite the above, Plaintiffs claim that Defendants retaliated against them in violation of 29 U.S.C. § 215(a)(3) by terminating them due to an alleged wage and hour claim, and their refusal to sign an arbitration agreement that would have required them to arbitrate same.  *See,* Statement of Material Facts ¶ 18.  In this regard, in January of 2014, Eulen decided to implement a company-wide mandatory arbitration agreement (hereinafter "agreement" or "arbitration agreement"), which required employees to arbitrate any dispute between them regarding their employment with the Company (subject to certain exceptions inapplicable to the case at bar).  Statement of Material Facts ¶ 4.  The execution of the agreement was a condition of employment with Eulen.  *Id..*  In March of 2014, Eulen began the process of rolling the agreement out to its approximately 2000 employees at Miami International Airport, where Plaintiffs worked, presenting the agreement to one or more departments at a time, and seeking the employees' signatures.  Statement of Material Facts ¶ 5.  In early May of 2014, Eulen presented the agreement to the employees in the cabin cleaning department, including Plaintiffs.  Statement of Material Facts ¶ 6.

On May 21, 2014, Camar Jones, Esq. of Shavitz Law Group, P.A. sent correspondence to counsel for Eulen at the time advising that he had been retained by approximately 30 current and former employees of the company for wage and hour issues.  Statement of Material Facts ¶ 7.  On May 23, 2014, Mr. Jones sent Eulen's then counsel correspondence listing the individuals who had retained his firm to represent them in wage and hour matters.  *Id..*  Pedro Lantigua Gomez and Pedro Galindo Gutierez were contained within the list.  *Id.*  On June 24, 2014, Mr. Jones filed a lawsuit against Defendant for the recovery of overtime wages pursuant to the Fair Labor Standards Act, whereby two individuals contained within Jones' list purportedly represented a putative class.  *Id.*

In mid-August, Eulen made the decision to proceed with terminating all employees who refused to sign the mandatory arbitration agreement, and instructed Human Resources Representative Thaimy Diaz to begin scheduling meetings with the non-signing employees to give them one last chance to sign the agreement and terminate them if they continued to refuse to

do so.  Statement of Material Facts ¶ 15.  On September 2, 2014, Eulen began the process of meeting with the non-signing employees, giving them one last chance to sign the agreement, and terminating them if they continued to refuse to do so, in accordance with the company's decision.  Statement of Material Facts ¶ 16.  On September 2, 2014 and September 3, 2014, Eulen terminated approximately 12 employees for not signing the mandatory arbitration agreement.  Statement of Material Facts ¶ 17.  Such days were the only days on which Eulen terminated employees for not signing the agreement.  *Id.*.

As discussed below, the law and undisputed facts conclusively demonstrate that Defendants complied with the FLSA, and did not retaliate against Plaintiffs based on their alleged wage and hour claim or refusal to sign Eulen's arbitration agreement.  As such, Defendants' Motion for Summary Judgment should be granted..

## SUMMARY OF THE ARGUMENT

Summary judgment should be entered in Defendants' favor because the undisputed facts establish that Defendants did not retaliate against Plaintiffs based on their alleged wage and hour claim or refusal to sign Eulen's arbitration agreement in violation of the Fair Labor Standards Act ("FLSA").  Specifically, Plaintiffs cannot establish a prima facie case of FLSA retaliation, Eulen made the decision to terminate Plaintiffs based on legitimate, non-retaliatory reasons, and Plaintiffs cannot establish that such reasons were pretextual.

## LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Posely v. Eckerd Corporation*, 433 F. Supp. 2d 1287, 1298 (quoting Fed. R. Civ. P. 56(c)).  However, Rule 56(c) does not require that the moving party negate the opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F. 2d 1254 (7th Cir. 1990).  "By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co., Ltd. v. Zenith*

- 3 -

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No. 1:14-cv-24245-RNS

*Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Posely*, 433 F. Supp. 2d at 1298. Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* Applying the standard for summary judgment set forth above, summary judgment should be granted in favor of Defendants in this matter.

## MEMORANDUM OF LAW

The Fair Labor Standards Act protects employees from being retaliated against for asserting their rights under the Act. 29 U.S.C. § 215(a)(3). Specifically, 29 U.S.C. §215(a)(3) provides that it is unlawful for a person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint related to the chapter. Courts analyze FLSA retaliation claims using the *McDonnell-Douglass* burden shifting analysis employed in cases that concern Title VII of the Civil Rights Act of 1964. *Sabatier v. Suntrust Bank*, 2008 WL 108796 (S.D. Fla. 2008); *Vandesande v. Miami-Dade County,* 431 F. Supp. 2d 1245, 1252-53 (S.D. Fla. 2006). Under the *McDonnell-Douglass* framework, a plaintiff must first make a prima facie showing of retaliation. If the plaintiff is able to make such a showing, the "exceedingly light" burden shifts to the defendant to rebut the presumption of retaliation by producing a legitimate non-retaliatory reason for the adverse employment action. *Wigfall v. Saint Leo University, Inc.,* 2012 WL 717868 (M.D. Fla. 2012) (citing *Sullivan v. Nat'l R.R. Passenger Corp.,* 170 F. 3d 1056, 1059 (11th Cir. 1999); *Sabatier v. Suntrust Bank*, 2008 WL 108796 (S.D. Fla. 2008); *Perryman v. Johnson Prods. Co.,* 698 F. 2d 1138, 1142 (11th Cir. 1993). Once the defendant meets this burden, the inference of retaliation raised by the prima facie case is rebutted, and in order for the plaintiff to prevail in his retaliation claim, the plaintiff must identify specific record evidence competent to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for retaliation and undeserving of credibility. *See Gupta v. Fla. Bd. of Regents,* 212 F. 3d 571, 590-

91 (11th Cir. 2000); *Wigfall v. Saint Leo University, Inc.*¸ 2012 WL 717868 (M.D. Fla. 2012); *Sabatier v. Suntrust Bank*, 2008 WL 108796 (S.D. Fla. 2008). In doing so, a plaintiff is not allowed to recast an employer's proffered non-retaliatory reason or substitute his business judgment for that of the employer. *Lee v. Mid-State Land & Timber Co., Inc.*, 285 Fed. Appx. 601 (11th Cir. 2008) (citing *Chapmman v. AI Transp.,* 229 F. 3d 1012, 1024 (11th Cir. 2000)). Rather, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Id*. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." *Chapmman,* 229 F. 3d at 1024. As discussed below, Plaintiffs have not and cannot establish a prima facie case of retaliation, dooming their claims. Even if Plaintiffs had established a prima facie case, Eulen has articulated legitimate non-retaliatory reasons for its terminations of Plaintiffs, and Plaintiffs have not and cannot demonstrate any evidence of pretext. In either event, Plaintiffs' claim fails.

### A. Plaintiffs Cannot Establish a Prima Facie Case of FLSA Retaliation.

In order to establish a prima facie case of FLSA retaliation, a plaintiff must prove that: (1) he engaged in activity protected under the Act; (2) he subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action. *Wolf v. Coca-Cola Co*., 200 F. 3d 1337, 1342-43 (11th Cir. 2000). Plaintiffs cannot establish a prima facie case of retaliation because they cannot proffer any competent evidence to establish each of the above-outlined requirements. Importantly, in demonstrating causation in a case for retaliatory discharge under the FLSA, a plaintiff must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights. *Alvarado v. I.G.W.T. Delivery Sys., Inc.,* 410 F. Supp. 2d 1272, 1278-79 (S.D. Fla. 2006); *Wolf v. Coca-Cola Co*., 200 F. 3d 1337, 1343 (11th Cir. 2000). "Employees who would have suffered exactly the same adverse action even if they had not engaged in FLSA activities will be unprotected under the 'but for' test." *Reich v. Davis*, 50 F. 3d 962, 966 (11th Cir. 1995). Specifically, the Eleventh Circuit has held that the plain language of the FLSA, which makes it unlawful for an employer to fire an employee "because" the employee asserted rights protected under the statute," requires that a FLSA retaliation plaintiff show that "but for" such assertion of rights, the adverse action would not have occurred. *Reich v. Davis*, 50 F. 3d 962, 966 (11th Cir. 1995).

The evidence obtained in the subject case reflects that neither Plaintiffs' alleged wage and hour claim nor refusal to sign Eulen's arbitration agreement was the "but for" reason for their terminations.

As an initial matter, Plaintiffs admit that they were never told that they were terminated due to their alleged wage and hour claim or refusal to sign Eulen's arbitration agreement. *See,* Statement of Material Facts ¶ 19.  Significantly, <u>Plaintiff Lantigua concedes that he has no evidence that that his termination was in any way related to his alleged wage and hour claim</u>. *See,* Statement of Material Facts ¶ 20.  Plaintiff Galindo conceded that the only evidence he has that he was fired because of his alleged wage and hour claim is the pressure he was working under and his dispute of Eulen's position that he did not conduct a proper and thorough security search.  *See,* Statement of Material Facts ¶ 21.  The only evidence Plaintiff Galindo offered in support of a contention that he was fired for not signing the arbitration agreement is the fact that other employees who refused to sign the arbitration agreement were terminated.  *See,* Statement of Material Facts ¶ 22.  It is axiomatic that general work pressure, mere disagreement with Eulen's assessment of Plaintiffs' actions and job performance, and the terminations of other employees have no relation to, let alone establish, any link between their terminations and their alleged wage and hour claim and refusal to sign Eulen's arbitration agreement.

Additionally, it is clear that <u>Plaintiffs' refusal to sign the arbitration agreement was not any cause for their terminations, let alone the "but for" cause of same, as Eulen did not make the decision to proceed with terminating employees who refused to sign the mandatory arbitration agreement, let alone actually begin the process of the terminations, until *after* Plaintiffs were terminated</u>.  Specifically, Eulen made the decision to proceed with terminating all employees who refused to sign the mandatory arbitration agreement in mid-August of 2014, began the process of terminating the non-signers who continued to refuse to sign on September 2, 2014, and terminated non-signers on only two days, namely, September 2, 2014 and September 3, 2014; however, Plaintiffs were terminated prior to said dates, with Galindo and Lantigua having been terminated in June of 2014.  *See,* Statement of Material Facts ¶¶ 15-17, 8.

In any event, the record clearly reflects that Plaintiffs were terminated solely as a result of Eulen's assessment that they failed to perform their jobs in a satisfactory manner and violated company policy in connection with same.  *See,* Statement of Material Facts ¶ 8.  Specifically, Eulen assessed that on June 11, 2014, cabin cleaner Pedro Galindo failed to perform a proper and

thorough security search of an aircraft as he was required to do, which followed a prior incident of an unsatisfactory security search of a plane, causing Eulen to lose confidence in Plaintiff's ability to perform his job properly. *See,* Statement of Material Facts ¶¶ 8-11. Eulen assessed that cabin cleaning crew chief Pedro Lantigua failed to check his employee, Pedro Galindo's, work and failed to notice that a proper and thorough security search of an aircraft had not been performed, as he was required to do, which followed a prior incident of an unsatisfactory security search of a plane, causing Eulen to lose confidence in Plaintiff's ability to perform his job properly. *Id.* Significantly, Galindo concedes that if he did not have the June 11, 2014 security incident, he would have remained employed by Eulen. *See,* Statement of Material Facts ¶ 13. A detailed discussion of Eulen's legitimate non-retaliatory reasons for Plaintiffs' terminations is contained within Section B below.

Although Plaintiffs can try to claim that Eulen's decisions were unfair, unwise, or incorrect, Plaintiffs cannot claim, and certainly cannot prove, that they were terminated because of their alleged wage and hour claim or refusal to sign Eulen's arbitration agreement. Instead of taking responsibility for their deficiencies, Plaintiffs have instead decided to raise charges of FLSA retaliation, without any foundation. Plaintiffs' failure to meet his burden by not showing *but for* causation is alone sufficient to grant summary judgment.

### B. Even if Plaintiffs Could Establish a Prima Facie Case of Retaliation, Eulen Has Articulated Non-Retaliatory Reasons for Terminating Them.

Even if Plaintiffs could somehow establish a prima facie case of FLSA retaliation, which they cannot, Eulen's assertion of legitimate, non-retaliatory reasons for terminating Plaintiffs rebuts any inference of retaliation raised. *See generally, Ash v. Sambodromo, LLC*, 2009 WL 3856367, *10 (S.D. Fla. 2009); *Bythewood v. Unisource Worldwide, Inc.,* 413 F. Supp. 2d 1367, 1372 n. 2 (N.D. Ga. 2006); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

Although the employer's explanation of its legitimate reasons must be clear and reasonably specific, its burden is only one of production, not persuasion, and is relatively light. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) (explaining employer's burden of production "can involve no credibility assessment"); *Holifield v. Reno*, 115 F. 3d 1555, 1564 (11th Cir. 1997) (noting intermediate burden is "exceedingly light"). In that regard, the employer "need not persuade the court that it was actually motivated by the proffered reasons." *Combs v. Plantation Patterns,* 106 F. 3d 1519, 1528 (11th Cir. 1997); *Hartsel v. Keys,* 87 F. 3d

- 7 -

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

795 (6th Cir. 1996) (holding "[i]t is important to note that the [employer] need not prove a non-discriminatory reason for [discharging the employee] but need merely articulate a valid rationale.") (citations omitted).

Defendants have met their "exceedingly light" burden of production. The undisputed facts establish that Eulen's terminations of Plaintiffs were based on legitimate, non-retaliatory reasons. Indeed, Plaintiffs were terminated solely as a result of Eulen's assessment that they failed to perform their jobs in satisfactory manners and violated company policy in connection with same, causing the company to lose confidence in Plaintiffs' ability to perform their jobs properly. *See,* Statement of Material Facts ¶ 8.

Specifically, a very important part of cabin employees' jobs is the safety and security of the aircrafts of Eulen's airline clients. *See,* Statement of Material Facts ¶ 3. In this regard, cabin employees are required to perform security searches of the aircraft, which includes checking every part of the plane where an item may have been hidden. *Id.* Each crew member is assigned a certain location of the plane to search. *Id.* Each crew chief is responsible for checking the work of his crew members, making sure that they did not miss anything, and noticing if a security search was not completed properly or thoroughly. *Id.* On June 11, 2014, the airline flight crew of a plane that Plaintiffs searched reported to Eulen that an item was found on the aircraft, causing the pilot to believe that the aircraft was unsecure. *See,* Statement of Material Facts ¶ 9. The location of the found item was that which Galindo was responsible for searching, and his crew chief on the subject aircraft was Lantigua. *Id.* The subject perceived security breach caused a 22 minute delay, caused Eulen to be fined, and depicted Eulen in a bad light to its client. *Id.* In sum, based on the information regarding the improper security search that Eulen learned from a third party flight crew, Eulen assessed that cabin cleaner Pedro Galindo failed to perform a proper and thorough security search of an aircraft as he was required to do, and that cabin cleaning crew chief Pedro Lantigua failed to check his employee Pedro Galindo's work and failed to notice that a proper and thorough security search of an aircraft had not been performed, as he was required to do. *See,* Statement of Material Facts ¶ 10. The above improper/incomplete security search was not the first time that Plaintiffs had an issue with a security search of an aircraft. *See,* Statement of Material Facts ¶ 11. Specifically, Plaintiffs had previously been written up due to TSA (Transportation Security Administration) having reported unsatisfactory issues in connection with Plaintiffs' search of a plane. *Id.* The write up stated that

Plaintiffs would be re-trained on interior search procedures and that failure to improve would result in suspension or termination. *Id.* Based on the above instances, reported by neutral third parties, Eulen lost confidence in Plaintiffs' ability to perform their jobs properly. *See,* Statement of Material Facts ¶ 12. Accordingly, Eulen decided to terminate Galindo and Lantigua. *Id.* The above-outlined performance issues assessed by Eulen were the sole reasons for Plaintiffs' terminations.

Significantly, employers have been successful in defeating plaintiffs' discrimination cases by establishing poor job performance, especially in the context of violations of company policies. *See Baas v. Guess?, Inc.*, 54 F. Supp. 2d 1105 (S.D. Ala. 1999) (holding that former employee who was terminated from manager position was not qualified for position, as required to establish a prima facie discrimination case, as employer was displeased with employee's performance and performance of his store); *Buskus v. Southern Bell Yellow Pages, Inc.*, 745 F. Supp. 556 (E.D. Ark 1990) (finding plaintiff did not establish a prima facie case of discrimination where employee was not performing her job satisfactorily by failing to meet the required average sales results); *Padob v. Entex Information Service*, 960 F. Supp. 806 (S.D.N.Y. 1997); *Brinkley v. Harbour Recreation Club*, 180 F. 3d 598 (4th Cir. 1999); *Pace,* 530 F. Supp. at 382 (N.D. Ga. 1981) (finding the plaintiff failed to establish a prima facie case of discrimination when the plaintiff's supervisor felt that the plaintiff did not do a satisfactory job of accepting the administrative responsibilities of his position, did not perform up to his full capabilities, and was made aware of such criticisms); *Jones v. Gerwens*, 874 F. 2d 1534, 1540 (11th Cir. 1989); (finding that an employee's failure to perform in a manner that is consistent with the employer's clearly delineated expectations and standards constitutes a legitimate, non-discriminatory reason for discharge); *Smith v. Horner,* 839 F. 2d 1530, 1538 (11th Cir. 1988).

Regardless, the employer does not have to establish that the discharge was justifiable. *See generally, Brennan v. Reynolds & Co.*, 367 F. Supp. 440 (N.D. Ill. 1973). Employers still retain their traditional right to terminate employees for legitimate business and economic reasons, such as unsatisfactory job performance. *Pericich v. Climatrol, Inc.*, 523 So. 2d 684, 685 (Fla. 3d Dist. App. 1988). Indeed, "civil rights laws do not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Jones v. Bessemer Carraway Medical Center,* 137 F. 3d 1306, 1311 (Ala. 1998). The employer's reason for an adverse employment action does not have to be one of which the court

- 9 -

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

or jury would approve, and "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Comm.*, 738 F. 2d 1181 (11th Cir. 1984); *see also Etienne v. Muvico Theaters, Inc.*, 2003 U.S. Dist. LEXIS 14036, at *39 (S.D. Fla. Mar. 11, 2003) ("the fact that an employer's decision might have been unwise or based on erroneous facts does not give rise to a Title VII employment discrimination claim"); *Jones v. Winn-Dixie Stores, Inc.,* 75 F. Supp. 2d 1357, 1366 (S.D. Fla. 1999) ("[w]hether or not the employer turns out to be right about the employee's conduct is not relevant, as long as the discipline was not based on discriminatory animus"). An employer "can fire an employee [even] if it is mistaken about the misconduct it believes the employee committed." *Padron v. BellSouth Telecomms.*, Inc., 196 F. Supp. 2d 1250, 1258 (S.D. Fla. 2002).

Thus, even if a jury disagrees with the flight crew's, TSA's, and/or Eulen's evaluations and determinations regarding the security searches or Plaintiffs' performance or actions, finds same to be poorly reasoned or based on inaccurate facts, or otherwise disagrees with Eulen's decision to terminate Plaintiffs, same is irrelevant, and does not negate Eulen's articulated non-retaliatory reasons.

### C. Plaintiffs Have Not and Cannot Demonstrate Any Evidence of Pretext.

Pretext means that the employer lied or "made up" the reason, and does not honestly believe the reason it offers. *Jones,* 137 F. 3d at 1313 n.11 (citations omitted); *Silvera v. Orange County School Board,* 244 F. 3d 1253, 1261 (11th Cir. 2001) (*citing, Wolf v. Buss Am. Inc.,* 77 F. 3d 914, 919 (7th Cir. 1996) (explaining that "[p]retext means more than a mistake on the part of the employer; pretext 'means a lie', specifically a phony reason for some action")). A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Restated, to constitute pretext, the reason for the adverse action must be a farce. Plaintiffs have not and cannot proffer any evidence, let alone "significantly probative evidence," that Eulen's proffered explanations for their decisions to terminate them is a pretext for intentional FLSA retaliation, namely, that the reasons for their terminations were false, or that retaliation was the real reason.

Case No. 1:14-cv-24245-RNS

Significantly, <u>Lantigua concedes that he has no evidence that Eulen was not truthful in telling him the reason for his discharge</u>.  *See,* Statement of Material Facts ¶ 14.  Thus, it is clear that Lantigua lacks any evidence of pretext, resulting with his claim failing.

The only allegations advanced by Plaintiff Galindo that he apparently believes evidences pretext are that he disputes Eulen's position that he did not conduct a proper and thorough security search, and other employees who refused to sign the arbitration agreement were terminated.  *See,* Statement of Material Facts ¶¶ 21, 22.

With regard to the former allegation, same merely disputing Eulen's assessment of his job performance and reason for terminating him do not suffice to constitute pretext.  To be sure, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer.  *See generally, Beck v. City of Haleyville, Ala.,* 127 F. Supp. 2d 1109, 1209 (N.D. Ala. 2001) (citing *Lee v. GTE Florida*, 226 F. 3d 1249, 1253 (11th Cir. 2000); *Combs,* 106 F. 3d 1519, 1543.  Importantly, an allegation of pretext "ordinarily will fail" when an employer makes a decision based on an employee's performance or conduct.  *See generally, Smith v. Horner*, 839 F. 2d 1530, 1538 (11th Cir. 1988).  <u>A plaintiff's loose allegations that his performance or conduct was acceptable are insufficient to establish than an employer's proffered reason is pretextual</u>, especially in the face of documented deficiencies.  *Beck v. City of Haleyville, Ala.,* 127 F. Supp. 2d 1197, 1209 (N.D. Ala. 2001) (citing *Lee v. GTE Florida*, 226 F. 3d 1249, 1253 (11th Cir. 2000); *See Combs,* 106 F. 3d 1519, 1543; *Holifield,* 115 F. 3d 1555, 1565.  Significantly, "<u>[t]he pretext inquiry is concerned with the decision-maker's perception, not the employee's own beliefs</u>." *See generally, Standard v. A.B.E.L. Services, Inc.,* 161 F. 3d 1318, 1332-33 (Ga. 1998); *Holifield*, 115 F. 3d at 1565 (emphasizing that subjective belief of the employee is not probative evidence of discrimination); *Moore,* 683 F. 3d 1321, 1323 n.4 (explaining that an employer's good faith belief determination is not pretext, even if incorrect).

In this regard, it is not for Plaintiff or the Court to sit as a "super-personnel" department and second-guess the wisdom of the decision.  *Chapman v. AI Transport,* 229 F. 3d 1012, 1030 (11th Cir. 2000) (holding that

> Federal Courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practice, no matter

how high-handed its decisional process, no matter how mistaken a firm's managers, the ... [law] does not interfere).

As stated by the Eleventh Circuit:

> we must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees. The factual issue to be resolved is not the wisdom or accuracy of [the employer's] conclusion that [the Plaintiff] was an unsatisfactory employee. We are not interested in whether the conclusion is a correct one, but whether it is an honest one. Like all Title VII cases where pretext is an issue, the question the fact finder must answer is whether [the employer's] proffered reasons were a cover-up for a ... discriminatory decision… We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.

See generally, *Rojas v. State of Fla.,* 285 F. 3d 1339, 1342 (11th Cir. 2002) (emphasis added) (affirming grant of summary judgment for employer, and further holding "[t]his kind of inquiry – whether a business decision is wise or nice or accurate - is precluded…") (internal citations and quotations omitted).

Importantly, "an employer may [take an employment action] for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix,* 738 F. 2d 1181. See generally, *Moore,* 683 F. 2d 1321, 1323 n.4 (explaining that an employer's good faith belief determination is not pretext, even if incorrect). See *Etienne,* 2003 U.S. Dist. LEXIS 14036, at *39 ("the fact that an employer's decision might have been unwise or based on erroneous facts does not give rise to a Title VII employment discrimination claim"); *Jones,* 75 F. Supp. 2d at 1366 ("[w]hether or not the employer turns out to be right about the employee's conduct is not relevant, as long as the discipline was not based on discriminatory animus"). An employer "can [take adverse employment action] if it is mistaken about the misconduct it believes [was] committed." *Padron*, 196 F. Supp. 2d at 1258.

Based on the above law, Galindo's (or Lantigua's) dispute of Eulen's assessment of his job performance and reasons for terminating him, and his own assertions of his good job performance, particularly when it is contradicted by the record, will not suffice to escape summary judgment. In this regard, an application of such law to the facts of the subject case dictates that even in the unlikely event that the trier of fact believes that the security search deficiencies outlined in section B regarding legitimate non-retaliatory reasons above did not

- 12 -

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

exist, the flight crew or TSA's report was inaccurate, the security search deficiencies were not Plaintiff's fault, Plaintiff had legitimate reasons for not noticing that a proper and complete security search of the aircraft had not been conducted, (Plaintiff had legitimate reasons for not finding the item), or otherwise disagree with Eulen's assessment of Plaintiff's job performance, such facts are irrelevant to the pretext analysis for summary judgment because Eulen legitimately perceived such performance issues to exist based on the flight crew's report reflecting that a proper or complete security search had not been performed, and TSA's report reflecting the prior security-related issue, and there is no evidence to suggest otherwise.  It also follows from the above law that even if it is determined that Eulen's decision to terminate Plaintiff(s) was poorly reasoned, based on inaccurate facts, or otherwise incorrect, such will not suffice to establish pretext and defeat summary judgment because the company honestly believed in good faith that its decisions were correct based on the neutral third party flight crew's report of the perceived security breach, the significance of same, the resulting flight delay, and the neutral third party TSA's report of the prior security search issue, discussed in detail throughout this Motion.

With regard to Galindo's claim that other employees who refused to sign the arbitration agreement were terminated (implying that they must have been terminated because they refused to sign and that same equates to him having been terminated for refusing to sign), such allegations constitute mere speculation and conjecture, and are uncorroborated, as there is no evidence linking Plaintiff's termination to his alleged wage and hour claim or refusal to sign Eulen's arbitration agreement.  As the Eleventh Circuit and other courts have noted, mere conclusions, unsupported factual allegations, speculation, and conjecture are insufficient to show that a defendant's explanation is a pretext for retaliation.  *See generally, Isenbergh v. Knight-Ridder Newspaper Sales, Inc*., 97 F. 3d 436, 443-44 (11th Cir. 1996) ("[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext . . . where [an employer] has offered ... evidence of legitimate . . . reasons for its actions"); *Sturniolo v. Sheaffer*, *Eaton, Inc*., 15 F. 3d 1023, 1026 (11th Cir. 1994) (a discharged employee's mere suspicion of discrimination, unsupported by personal knowledge of discrimination, will not constitute pretext).  *Moses v. Am. Nonwovens, Inc.,* 97 F. 3d 446 (11th Cir. 1996); *Texas Department of Community Affairs,* 450 U.S. 248, 256 (1981) (holding that although Plaintiff may attempt to generally assert that the reasons proffered by the Firm for his adverse employment action were pretextual, mere conclusory allegations and assertions will not suffice); *McMillian v.*

*Svetanoff,* 878 F. 2d 186 (7th Cir. 1989) (finding plaintiff's subjective belief that defendant was biased insufficient to create genuine issue of material fact to overcome motion for summary judgment).

Finally, the lack of pretext is further evidenced by the fact that Eulen terminated at least nine other employees, namely, the remaining Plaintiffs in the above-captioned case, due to their refusal to sign the arbitration agreement, and freely admitted same via its termination reports and deposition testimony. ¶ 17. Thus, it is evident that had Eulen terminated Galindo and Lantigua due to their refusal to sign the arbitration agreement, Eulen would not have hidden or sought to hide same, and same would have been reflected by the termination reports for said individuals. In line therewith, Plaintiffs offered no basis for a belief that Eulen was biased against them due to their alleged wage and hour claim or refusal to sign Eulen's arbitration agreement.

In sum, Plaintiffs failed to offer any evidence that Eulen's reasons for terminating them were pretextual and the true reason was their alleged wage and hour claim or refusal to sign Eulen's arbitration agreement. *See generally, Lee v. Mid-State Land & Timber Co., Inc.*, 285 Fed. Appx. 601 (11th Cir. 2008). Plaintiffs cannot create a genuine factual issue to "rebut head on" Eulen's legitimate, non-retaliatory reasons for its decision to terminate them and show that its decisions were merely pretext for retaliation. Instead, Plaintiffs appear determined to substitute their business judgment for Eulen's by arguing that they should not have been terminated. Thus, Plaintiffs' retaliation claim fails as a matter of law. *See , generally, Philips v. Aaron Rents, Inc.*, 262 Fed. Appx. 202 (11th Cir. 2008).[1]

## CONCLUSION

Plaintiffs cannot establish a prima facie case of FLSA retaliation because neither their alleged wage and hour claim nor refusal to sign Eulen's arbitration agreement was the "but for" reason for Eulen's decision to terminate them. Further, the undisputed facts establish that Eulen made the decision to terminate Plaintiffs based on legitimate, non-retaliatory reasons, and Plaintiffs cannot establish, and have offered no facts, that such reasons were pretextual.

---

[1] In the event that this Court is not inclined to grant this Motion, Defendants argue in the alternative that summary judgment should be entered in their favor on Plaintiffs' claim based on the arguments advanced in Defendants' Motion for Summary Judgment as to Claim Asserted by Ismael Rodriguez Diaz, Yanaris Pena, Jose Raudales, Lieng Un Rey, Jose Mora, Amaury Gonzalez, Carlos Zelaya, Osmar Rodriguez, Fernando Aguila, and Jose Caballero. Specifically, Defendants would assert that even if it were to be determined that Plaintiffs were terminated for refusing to sign Eulen's arbitration agreement, Plaintiffs' claim would still fail as a matter of law for the reasons articulated in such Motion.

- 14 -

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No. 1:14-cv-24245-RNS

Accordingly, in applying the undisputed material facts to the relevant law, no rational fact-finder could conclude that Plaintiffs' alleged wage and hour claim and refusal to sign Eulen's Arbitration Agreement played any role in their terminations, and summary judgment should be awarded to Defendants.

WHEREFORE, for the reasons detailed above, Defendants respectfully request that this Honorable Court enter an Order granting their Motion for Summary Judgment, and for whatever further relief this Court deems equitable and proper.

> COLE, SCOTT & KISSANE, P.A.
> Attorneys for Defendants
> Esperante Building
> 222 Lakeview Avenue, Suite 120
> Telephone: 561-383-9236
> Facsimile: 561-683-8988
>
> By: /s/ Nicole Wall_____
>     NICOLE WALL
>     FBN: 17430
>     E-Mail: nicole.wall@csklegal.com

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 28th day of August, 2015, we electronically filed the foregoing document with the Clerk of Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> By: /s/ Nicole Wall_____
>     NICOLE WALL
>     FBN: 17430
>     E-Mail: nicole.wall@csklegal.com

**SERVICE LIST**
J.H. Zidell, Esq.
J.H. Zidell, P.A.
Attorneys for Plaintiffs
300 71st Street
Suite 605
Miami Beach, FL  33141
Zabogado@aol.com
*VIA CM/ECF*