UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:14-cv-24245-RNS

ISMAEL RODRIGUEZ DIAZ, et al.,

      Plaintiffs,

v.

AMERICAN SALES AND MANAGEMENT
ORGANIZATION, LLC, a Florida limited
liability company, EULEN AMERICA, INC.,
and LIVAN ACOSTA,

      Defendants.

_____/

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AS TO CLAIM ASSERTED BY PLAINTIFFS PEDRO
LANTIGUA GOMEZ AND PEDRO GALINDO GUTIEREZ**

COME NOW Defendants, American Sales and Management Organization, LLC, Eulen

America, Inc., and Livan Acosta, by and through the undersigned counsel, pursuant to Rule 56.1

of the Local Rules for the Southern District of Florida, and submit their Statement of Material

Facts upon which there is no genuine issue to be tried, and state as follows:

1.      Plaintiff Pedro Galindo Gutierez (hereinafter "Galindo") began working for Eulen

America, Inc. (hereinafter "Eulen") in October of 2012 and at times material served as a cabin

cleaning agent in the company's cabin service department.  *See,* Amended Complt ¶ 20, attached

hereto as Exhibit A; Depo. of Galindo, pg. 32, attached hereto as Exhibit B; Galindo's Answer to

Interrogatory No. 10, attached hereto as Exhibit C; Galindo's Separation Report, attached hereto

as Exhibit D.

2.      Plaintiff Pedro Lantigua Gomez (hereinafter "Lantigua") began working for Eulen

in October of 2012  and at times material  served as a crew chief in the company's  cabin service

Case No. 1:14-cv-24245-RNS

department. *See,* Amended Complt ¶ 21; Depo. of Lantigua, pg. 26, attached hereto as Exhibit E; Lantigua's Answer to Interrogatory No. 10, attached hereto as Exhibit F; Lantigua's Separation Report, attached hereto as Exhibit G.

3.      A very important part of cabin service employees' jobs is the safety and security of the aircrafts of Eulen's airline clients.  *See,* Depo. of Diaz, pgs. 71-73, attached hereto as Exhibit H.  In this regard, cabin employees are required to perform security searches of the aircraft, which includes checking every part of the plane where an item may have been hidden. *Id.* at pg. 69.  Each crew member is assigned a certain location of the plane to search.  *Id.*  Each crew chief is responsible for checking the work of his crew members, making sure that they did not miss anything, and noticing if a security search was not completed properly or thoroughly. *See,* Lantigua's Separation Report; Lantigua's Disciplinary Action Form, attached hereto as Exhibit I; Lantigua's Answer to Interrogatory, No. 10.

4.      In January of 2014, Eulen decided to implement a company-wide mandatory arbitration agreement (hereinafter "agreement" or "arbitration agreement"), which required employees to arbitrate any dispute between them regarding their employment with the Company (subject to certain exceptions inapplicable to the case at bar).  *See,* Depo. of Tunon, pgs. 7, 9-13, 21, 47, attached hereto as Exhibit J.  The execution of the agreement was a condition of employment with Eulen.  *Id.* at pg. 13.

5.      In March of 2014, Eulen began the process of rolling the agreement out to its approximately 2000 employees at Miami International Airport, where Plaintiffs Lantigua and Galindo (jointly "Plaintiffs") worked, presenting the agreement to one or more departments at a time, and seeking the employees' signatures.  *See,* Depo. of Diaz, pgs. 8, 16-20, 30, 35, 37; Depo. of Tunon, pg. 46.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No. 1:14-cv-24245-RNS

6.      In early May of 2014, Eulen presented the agreement to the employees in the cabin service department, including Plaintiffs.  Depo. of Diaz, pgs. 20, 81-82; Depo of Lantigua, pgs. 51-52.

7.      On May 21, 2014, Camar Jones, Esq. of Shavitz Law Group, P.A. sent correspondence to counsel for Eulen at the time advising that he had been retained by approximately 30 current and former employees of the company for wage and hour issues.  *See,* Exhibit A to Amended Complt.   On May 23, 2014, Mr. Jones sent Eulen's then counsel correspondence listing the individuals who had retained his form to represent them in wage and hour matters.  *See,* Exhibit B to Amended Complt.  Pedro Lantigua Gomez and Pedro Galindo Gutierez were contained within the list.  *Id.*  On June 24, 2014, Mr. Jones filed a lawsuit against Defendant for the recovery of overtime wages pursuant to the Fair Labor Standards Act, whereby two individuals contained within Jones' list purportedly represented a putative class.  *See,* Amended Complt ¶ 40; Exhibit B to same.

8.      In mid-June of 2014, Plaintiffs were terminated as a result of Eulen's assessment that they failed to perform their jobs in satisfactory manners and violated company policy in connection with same, causing the company to lose confidence in Plaintiffs' ability to perform their jobs properly.  *See,* Plaintiffs' Separation Reports; Lantigua's Disciplinary Action Form; Galindo's Disciplinary Action Form, attached hereto as Exhibit K; Amended Complt ¶¶ 20-22; Depo. of Diaz, pgs. 67-73.

9.      On June 11, 2014, the airline flight crew of a plane that Plaintiffs searched reported to Eulen that an item was found on the aircraft, causing the pilot to believe that the aircraft was unsecure.  *See,* Depo. of Diaz, pgs. 69, 72; Plaintiffs' Separation Reports and Disciplinary Action Forms.  The location of the found item was that which Galindo was

Case No. 1:14-cv-24245-RNS

responsible for searching, and his crew chief on the subject aircraft was Lantigua. *See,* Depo. of Diaz, pg. 70; Lantigua's Separation Report and Disciplinary Action Form. The subject perceived security breach caused a 22 minute delay, caused Eulen to be fined, and depicted Eulen in a bad light to its client. *See,* Depo. of Diaz, pgs. 69, 72-73.

10. Based on the information regarding the improper security search that Eulen learned from a third party flight crew, Eulen assessed that cabin cleaner Pedro Galindo failed to perform a proper and thorough security search of an aircraft as he was required to do, and that cabin cleaning crew chief Pedro Lantigua failed to check his employee Pedro Galindo's work and failed to notice that a proper and thorough security search of an aircraft had not been performed, as he was required to do. *See,* Plaintiffs' Separation Reports and Disciplinary Action Forms; Depo. of Diaz, pgs. 67-73.

11. The above improper/incomplete security search was not the first time that Plaintiffs had an issue with a security search of an aircraft. Specifically, Plaintiffs had previously been written up due to TSA (Transportation Security Administration) having reported unsatisfactory issues in connection with Plaintiffs' search of a plane. *See,* Depo. of Diaz, pgs. 75, 76; Plaintiffs' Disciplinary Action Forms, attached hereto as Exhibit L. The write ups stated that Plaintiffs would be re-trained on interior search procedures and that failure to improve would result in suspension or termination. *Id.*

12. Based on the above instances, reported by neutral third parties, Eulen lost confidence in Plaintiffs' ability to perform their jobs properly. *See,* Depo. of Diaz, pg. 75. Accordingly, Eulen decided to terminate Galindo and Lantigua. *Id.* at 67-76.

13. Galindo concedes that if he did not have the June 11, 2014 security incident, he would have remained employed by Eulen. *See,* Depo. of Galindo, pg. 72.

-4-

Case No. 1:14-cv-24245-RNS

14.    Lantigua concedes that he has no evidence that Eulen was not truthful in telling him the reason for his discharge.  *See,* Depo. of Lantigua, pg. 62.

15.    In mid-August, Eulen made the decision to proceed with terminating all employees who refused to sign the mandatory arbitration agreement, and instructed Human Resources Representative Thaimy Diaz to begin scheduling meetings with the non-signing employees to give them one last chance to sign the agreement and terminate them if they continued to refuse to do so.  *See,* Depo. of Tunon, pgs. 47-50; Depo. of Diaz, pgs. 6, 38-39, 112-116.

16.    On September 2, 2014, Eulen began the process of meeting with the non-signing employees, giving them one last chance to sign the agreement, and terminating them if they continued to refuse to do so, in accordance with the company's decision.  *See,* Depo. of Diaz, pgs. 58, 114-116.

17.    On September 2, 2014 and September 3, 2014, Eulen terminated approximately 12 employees for not signing the mandatory arbitration agreement, nine of whom are the remaining Plaintiffs in the above-captioned case.  *See,* Depo. of Diaz, pgs. 115-116, 119-120; Aff. of Diaz, attached hereto as Exhibit M; Aff. of Rafuls, attached hereto as Exhibit N; Depo. of Tunon pgs 63-64; Separation Reports of 9 other named Plaintiffs in above-captioned case, attached hereto as Exhibit O.  Such days were the only days on which Eulen terminated employees for not signing the agreement.  *See,* Depo. of Diaz, pgs. 115-116; Aff. of Diaz; Aff. of Rafuls.

18.    Plaintiffs claim that Defendants retaliated against them in violation of 29 U.S.C. § 215(a)(3) by terminating them due to an alleged wage and hour claim, and their refusal to sign an

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No. 1:14-cv-24245-RNS

arbitration agreement that would have required them to arbitrate same. *See,* Amended Complt. ¶¶ 41, 42.

19.     Plaintiffs were never told that they were terminated due to their alleged wage and hour claim or refusal to sign Eulen's arbitration agreement. *See,* Depo. of Lantigua pg. 61; Lantigua's Resp. to Request for Admission No. 7, attached hereto as Exhibit P; Depo. of Galindo, pgs. 67-68, 70, 71; Galindo's Resp. to Request for Admission No. 6, attached hereto as Exhibit Q.

20.     Plaintiff Lantigua has no evidence that that his termination was in any way related to his alleged wage and hour claim. *See,* Depo. of Lantigua, pg. 60.

21.     The only evidence Plaintiff Galindo has that he was fired because of his alleged wage and hour claim is the pressure he was working under and his dispute of Eulen's position that he did not conduct a proper and thorough security search. *See,* Depo. of Galindo, pg. 68.

22.     The only evidence Plaintiff Galindo has in support of a contention that he was fired for not signing the arbitration agreement is the fact that other employees who refused to sign the arbitration agreement were terminated. *See,* Depo. of Galindo pgs., 70-72.

Dated: August 28, 2015.

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendants
Esperante Building
222 Lakeview Avenue, Suite 120
Telephone: 561-383-9236
Facsimile:  561-683-8988

By: /s/ Nicole Wall_____
      NICOLE WALL
      FBN: 17430
      E-Mail: nicole.wall@csklegal.com

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No. 1:14-cv-24245-RNS

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 28th day of August, 2015, we electronically filed the foregoing document with the Clerk of Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Nicole Wall_____
NICOLE WALL
FBN: 17430
E-Mail: nicole.wall@csklegal.com

**SERVICE LIST**
J.H. Zidell, Esq.
J.H. Zidell, P.A.
Attorneys for Plaintiffs
300 71st Street
Suite 605
Miami Beach, FL  33141
Zabogado@aol.com
*VIA CM/ECF*

-7-