UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:14-cv-24245-RNS

ISMAEL RODRIGUEZ DIAZ, et al.,

     Plaintiffs,

v.

AMERICAN SALES AND MANAGEMENT
ORGANIZATION, LLC, a Florida limited
liability company, EULEN AMERICA, INC.,
and LIVAN ACOSTA,

     Defendants.

_____/

## DEFENDANTS AMERICAN SALES AND MANAGEMENT ORGANIZATION, LLC, EULEN AMERICA, INC., AND LIVAN ACOSTA'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW AS TO CLAIM ASSERTED BY PLAINTIFFS ISMAEL RODRIGUEZ DIAZ, YANARIS PENA, JOSE RAUDALES, LIENG UN REY, JOSE MORA, AMAURY GONZALEZ, CARLOS ZELAYA, OSMAR RODRIGUEZ, JOSE CABALLERO, AND FERNANDO AGUILA

COME NOW Defendants American Sales and Management Organization, LLC, Eulen America, Inc., and Livan Acosta, by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56(b) and United States District Court for the Southern District of Florida Local Rule 56.1, move this Court for entry of an Order granting summary judgment in favor of Defendants on Plaintiffs' Ismael Rodriguez Diaz, Yanaris Pena, Jose Raudales, Lieng Un Rey, Jose Mora, Amaury Gonzalez, Carlos Zelaya, Osmar Rodriguez, Jose Caballero, and Fernando Aguila's ("Plaintiffs") Complaint, and, in support thereof, state as follows:

### INTRODUCTION

Plaintiffs Ismael Rodriguez Diaz, Yanaris Pena, Jose Raudales, Lieng Un Rey, Jose Mora, Amaury Gonzalez, Carlos Zelaya, Osmar Rodriguez, and Fernando Aguila (jointly "Plaintiffs") began working for Eulen America, Inc. (hereinafter "Eulen") in or around October of 2012, and at times material served as a cabin cleaning agents in the company's cabin service department. *See* Statement of Material Facts ¶ 1. Plaintiff Jose Caballero worked as a driver for Eulen at all times material. *Id.*

Case No.: 1:14-cv-24245-RNS

In January of 2014, Eulen decided to implement a company-wide mandatory arbitration agreement (hereinafter "agreement" or "arbitration agreement"), which required employees to arbitrate any dispute between them regarding their employment with the Company (subject to certain exceptions inapplicable to the case at bar). *See* Statement of Material Facts ¶ 2. The execution of the agreement was a condition of employment with Eulen. *Id.* In March of 2014, Eulen began the process of rolling the agreement out to its approximately 2000 employees at Miami International Airport, where Plaintiffs worked, presenting the agreement to one or more departments at a time, and seeking the employees' signatures. *See* Statement of Material Facts ¶ 3. In early May of 2014, Eulen presented the agreement to the employees in the cabin cleaning department, including Plaintiffs. *See* Statement of Material Facts ¶ 4.

On May 21, 2014, Camar Jones, Esq. of Shavitz Law Group, P.A. sent correspondence to counsel for Eulen at the time correspondence advising that he had been retained by approximately 30 current and former employees of the company for wage and hour issues. *See* Exhibit A to Amended Complt. *See* Statement of Material Facts ¶ 5. On May 23, 2014, Mr. Jones sent Eulen's then counsel correspondence listing the individuals who had retained his firm to represent them in wage and hour matters. *Id.* Such correspondence did not reference the FLSA or the filing of an overtime claim. *Id.* On June 24, 2014, Mr. Jones filed a lawsuit against Defendant for the recovery of overtime wages pursuant to the Fair Labor Standards Act, ("FLSA") whereby two individuals contained within Jones' list purportedly represented the putative class. *Id.* The Plaintiffs in this matter were never named as plaintiffs in said lawsuit, nor was a class ever certified or even moved for. *Id.*

In July of 2014, Plaintiff Jose Caballero was terminated as a result of Eulen's assessment that he failed to perform his job in a satisfactory manner and violated company policy in connection with same. *See* Statement of Material Facts ¶ 6.

In mid-August, Eulen made the decision to proceed with terminating all employees who refused to sign the mandatory arbitration agreement, and instructed Human Resources Representative Thaimy Diaz to begin scheduling meetings with the non-signing employees to give them one last chance to sign the agreement and terminate them if they continued to refuse to do so. *See* Statement of Material Facts ¶ 7.  On September 2, 2014, Eulen began the process of meeting with the non-signing employees, giving them one last chance to sign the agreement, and

Case No.: 1:14-cv-24245-RNS

terminating them if they continued to refuse to do so, in accordance with the company's decision.  *See* Statement of Material Facts ¶ 8.

On September 2, 2014 and September 3, 2014, Eulen terminated approximately 12 employees for not signing the mandatory arbitration agreement, including Ismael Rodriguez Diaz, Yanaris Pena, Jose Raudales, Lieng Un Rey, Jose Mora, Amaury Gonzalez, Carlos Zelaya, Osmar Rodriguez, and Fernando Aguila. [1] *See* Statement of Material Facts ¶ 9.  Plaintiffs claim that such termination due to their failure to sign the arbitration agreement constitutes retaliation in violation of the FLSA. *See* Statement of Material Facts ¶ 10. Plaintiffs further claim that they were terminated due to an allegedly threatened FLSA claim, also constituting retaliation under the FLSA. *See* Statement of Material Facts ¶ 11.  Specifically, Plaintiffs allege that signing the arbitration agreement would have required them to relinquish their right to a jury trial for their allegedly threatened wage and hour claim. *Id.*

As discussed below, the law and undisputed facts conclusively demonstrate that Defendants complied with the FLSA and did not retaliate against Plaintiffs in violation of same. As such, Defendants' Motion for Summary Judgment should be granted.

## SUMMARY OF THE ARGUMENT

Summary judgment should be entered in Defendants' favor because the undisputed facts establish that Defendants did not terminate Plaintiffs based on their allegedly threatened wage and hour claim, lawfully terminated Plaintiffs for not signing the arbitration agreement, and did not retaliate against Plaintiffs in violation of the Fair Labor Standards Act.  In this regard, Plaintiffs cannot establish a prima facie case of FLSA retaliation, Defendants made the decision to terminate Plaintiffs based on legitimate, non-retaliatory reasons, and Plaintiffs cannot establish that such reasons were pretextual.

---

[1] In the event that this Court is not inclined to grant this Motion as to Plaintiff Jose Caballero, assuming arguendo for the purposes of this Motion that Caballero was terminated for the same reason as the other 9 Plaintiffs identified herein, as Caballero alleges, Defendants argue in the alternative that summary judgment should be entered in their favor on Caballero's claim based on the arguments advanced in Defendants' Motion for Summary Judgment as to the claim asserted by Pedro Galindo Gutierez and Pedro Lantigua Gomez, i.e., poor job performance.

COLE, SCOTT & KISSANE, P.A.
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 1:14-cv-24245-RNS

## LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Posely v. Eckerd Corporation*, 433 F. Supp. 2d 1287, 1298 (quoting Fed. R. Civ. P. 56(c)). However, Rule 56(c) does not require that the moving party negate the opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254 (7th Cir. 1990). "By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as the material facts." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Posely*, 433 F. Supp. 2d at 1298. Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* Applying the standard for summary judgment set forth above, summary judgment should be granted in favor of Defendants in this matter.

## MEMORANDUM OF LAW

The Fair Labor Standards Act protects employees from being retaliated against for asserting their rights under the Act. 29 U.S.C. § 215(a)(3). Specifically, 29 U.S.C. §215(a)(3) provides that it is unlawful for a person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint related to the chapter. Courts analyze FLSA retaliation claims using the *McDonnell-Douglass* burden shifting analysis employed in cases that concern Title VII of the Civil Rights Act of 1964. *Sabatier v. Suntrust Bank*, 2008 WL 108796 (S.D. Fla. 2008); *Vandesande v. Miami-Dade County,* 431 F.Supp.2d

- 4 -

Case No.: 1:14-cv-24245-RNS

1245, 1252-53 (S.D. Fla. 2006).  Under the *McDonnell-Douglass* framework, a plaintiff must first make a prima facie showing of retaliation.  If the plaintiff is able to make such a showing, the "exceedingly light" burden shifts to the defendant to rebut the presumption of retaliation by producing a legitimate non-retaliatory reason for the adverse employment action. *Wigfall v. Saint Leo University, Inc.,* 2012 WL 717868 (M.D. Fla. 2012) (citing *Sullivan v. Nat'l R.R. Passenger Corp.,* 170 F. 3d 1056, 1059 (11th Cir. 1999); *Sabatier v. Suntrust Bank,* 2008 WL 108796 (S.D. Fla. 2008); *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir. 1993).  Once the defendant meets this burden, the inference of retaliation raised by the prima facie case is rebutted, and in order for the plaintiff to prevail in his retaliation claim, the plaintiff must identify specific record evidence competent to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for retaliation and undeserving of credibility. *See  Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 590-91 (11th Cir. 2000); *Wigfall v. Saint Leo University, Inc.,* 2012 WL 717868 (M.D. Fla. 2012); *Sabatier v. Suntrust Bank,* 2008 WL 108796 (S.D. Fla. 2008).  In doing so, a plaintiff is not allowed to recast an employer's proffered nonretaliatory reason or substitute his business judgment for that of the employer. *Lee v. Mid-State Land & Timber Co., Inc.*, 285 Fed. Appx. 601 (11th Cir. 2008) (citing *Chapmman v. AI Transp.,* 229 F.3d at 1024).  Rather, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Id.* "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment.'' *Chapmman,* 229 F.3d at 1024.

As discussed below, Plaintiffs cannot establish a prima facie case of retaliation, dooming their claims.  Even if Plaintiffs had established a prima facie case, Defendants have articulated legitimate non-retaliatory reasons for Eulen's terminations of Plaintiffs, and Plaintiffs have not and cannot demonstrate any evidence of pretext. In either event, Plaintiffs' claim fails.

**A.      Plaintiffs Cannot Establish a Prima Facie Case of FLSA Retaliation.**

In order to establish a prima facie case of FLSA retaliation, a plaintiff must prove that: (1) she engaged in activity protected under the Act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action. *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).

Case No.: 1:14-cv-24245-RNS

Plaintiffs cannot establish a prima facie case of retaliation because they cannot proffer any competent evidence to establish each of the above-outlined requirements.

### 1.    There Is No Causal Connection Between Plaintiffs' Allegedly Threatened Wage and Hour Claim And Their Terminations.

Importantly, in demonstrating causation in a case for retaliatory discharge under the FLSA, a plaintiff must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights. *Alvarado v. I.G.W.T. Delivery Sys., Inc.,* 410 F. Supp. 2d 1272, 1278-79 (S.D. Fla. 2006); *see also Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000); *Poole v. City of Plantation, Fla.*, 188 L.R.R.M. (BNA) 3425 (S.D. Fla. 2010)."Employees who would have suffered exactly the same adverse action even if they had not engaged in FLSA activities will be unprotected under the 'but for' test." *Reich v. Davis*, 50 F.3d 962, 966 (11th Cir. 1995). Specifically, the Eleventh Circuit has held that the plain language of the FLSA, which makes it unlawful for an employer to fire an employee "because" the employee asserted rights protected under the statute," requires that a FLSA retaliation plaintiff show that "but for" such assertion of rights, the adverse action would not have occurred. *Id.*

The evidence obtained in the subject case reflects that Plaintiffs' allegedly threatened wage and hour claim was not any, let alone the "but for," reason for their terminations. As an initial matter, Plaintiffs concede they were terminated due to their refusal to sign Eulen's company-wide mandatory arbitration agreement. *See* Statement of Material Facts ¶ 10. Additionally, Plaintiffs Diaz, Pena, Raudales, Rey, Aguila, Mora, and Rodriguez admit that either they have no evidence that they were terminated in retaliation for their allegedly threatened wage and hour claim, or their allegations are based solely on speculation. *See* Statement of Material Facts ¶13-16. Finally, the protracted delay between Plaintiffs' allegedly threatened wage and hour claim and their terminations indicates a lack of retaliation. *See* Statement of Material Facts ¶ 5 & 9. It is clear that there is no evidence of any link between Plaintiffs' terminations and their allegedly threatened wage and hour claim.

### a.    Plaintiffs Concede They Were Terminated Because They Refused To Sign The Arbitration Agreement.

As an initial matter, Plaintiffs concede that they were terminated due to their refusal to sign the arbitration agreement. *See* Statement of Material Facts ¶ 10. Plaintiff Osmar Rodriguez

COLE, SCOTT & KISSANE, P.A.
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 1:14-cv-24245-RNS

specifically testified that he was terminated for not signing an arbitration agreement and that same "is no reason to fire a worker," testifying as follows:

> Q.    Do you believe that the reason that they gave you for your termination was true?
> A.    No, ma'am.
> Q.    Why not?
> A.    I don't think that is the reason to terminate a worker.
> Q.    What do you think their reason was?
> A.    Yes, that was the reason. What I am saying is that that is no reason to fire a worker.

*See* Statement of Material Facts, ¶16. As set forth in detail below, Defendants lawfully terminated Plaintiffs for not signing the arbitration agreement, and did not retaliate against Plaintiffs in violation of the FLSA. Indeed, there is no connection whatsoever between Plaintiffs' terminations and their allegedly threatened wage and hour claim.

> **b.    Plaintiffs Diaz, Pena, Raudales, And Rey Concede That They Have <u>No Evidence</u> That They Were Terminated In Retaliation For Purportedly Threatening To Pursue A Wage And Hour Claim Against Defendants.**

Plaintiffs Diaz, Pena, Raudales, and Rey concede they have no evidence that they were terminated in retaliation for their allegedly threatened wage and hour claim. *See* Statement of Material Facts, ¶ 13. To be sure, Plaintiffs acknowledged this during their depositions, the relevant portions of which are cited below.

> **i.    Ismael Rodriguez Diaz**

> Q.    Do you think that your termination had anything to do with your threatened lawsuit?
> A.    Totally.
> Q.    What evidence do you have that it did?
> A.    I don't have it.
> Q.    You don't have any evidence that it – your termination was related to your threatened lawsuit?
> A.    No.
> Q.    Why do you believe that they're related?
> A.    I have no answer.

*See* Statement of Material Facts ¶ 13.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 1:14-cv-24245-RNS

### ii.        Yanaris Pena

Q.     Do you have any evidence that your termination was related to your pending or threatened lawsuit?[2]

A.     No.

*See id.*

### iii.        Jose Raudales

Q.     Do you have any evidence that the reason that you were terminated was because you had a pending lawsuit for wages against Eulen?

A.     No.

*See id.*

### iv.        Lieng Un Rey

Q.     Do you have any evidence that you were terminated because you had a pending lawsuit against the company?

A.     No. I don't know.

*See id.* Plaintiffs Diaz, Pena, Raudales, and Rey have not produced and cannot offer *any* evidence to show that their allegedly threatened wage and hour claim even played a role in their termination, let alone that it was the *but for* cause of their terminations. The record clearly reflects that Plaintiffs were terminated solely as a result of their refusal to sign the company's mandatory arbitration agreement. *See* Statement of Material Facts ¶ 9. Based on the foregoing, it is clear that Plaintiffs Diaz, Pena, Raudales, and Rey cannot establish a prima facie case of retaliation based on their allegedly threatened wage and hour claim.

Additionally, all ten Plaintiffs addressed in this Motion, namely, Diaz, Pena, Raudales, Rey, Rodriguez, Aguila, Mora, Gonzales, Zelaya, and Caballero concede that they were never told by Eulen that they were terminated due to their allegedly threatened wage and hour claim. *See* Statement of Material Facts ¶ 12.

---

[2] Plaintiffs claimed at depositions that they had a pending lawsuit against Defendants for overtime wages, but the evidence reflects that such was not the case, as the Plaintiffs in this case were not named in the lawsuit filed against Defendants in June of 2014, nor was any class certified or even moved for in that matter. *See generally* Statement of Material Facts ¶5.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 1:14-cv-24245-RNS

> **c.    Plaintiffs Mora and Aguila's Conclusory Allegations of Retaliation Are Based Solely On Speculation And Conjecture, Are Uncorroborated, And Are Insufficient To Survive Summary Judgment.**

Plaintiffs Mora and Aguila's conclusory allegations of retaliation are based solely on speculation and conjecture, are uncorroborated, and are insufficient to survive summary judgment. *See generally, Standard v. A.B.E.L. Services, Inc.,* 161 F. 3d 1318, 1332-33 (Ga. 1998); *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir. 1997) (emphasizing that subjective belief of the employee is not probative evidence of discrimination).

> **i.    Jose Mora**

Plaintiff Mora alleges that the "evidence" that his discharge was due to his allegedly threatened wage and hour claim is that Yasmin Kendrick allegedly posted a "blacklist" of employees with pending claims and targeted them for termination.

> Q.    Do you have any evidence that your discharge was due to your threatened or pending lawsuit for wages against Eulen?
> A.    Correct.
> Q.    You do have evidence?
> A.    Yes, I have evidence.
> Q.    What is the evidence?
> A.    Not here with me.
> Q.    Can you describe your evidence?
> A.    There was a blacklist. They made it public where Ms. Yasmin stated on several occasions, publicly, the reasons behind the list and the employees that were about to get terminated, that exactly.

*See* Statement of Material Facts ¶15. However, no such "blacklist" existed. By contrast, the list Mora referenced was merely a list of employees who needed to meet with human resources to sign the arbitration agreement. Specifically, throughout the process of rolling out the arbitration agreement, Thaimy Diaz, Eulen's Human Resources Representative, would email the names of employees that she needed to see to sign the arbitration agreement to the managers of each department, including Yasmine Kendrick, who was Eulen's Cabin Services Manager at that time. *See* Statement of Material Facts ¶18. Once Yasmine received Thaimy's email, she forwarded same to her assistant Anelys Montejo to handle. *Id*. Anelys erroneously interpreted Yasmin's email to mean that she was to post the list on the wall in the cabin department so that the employees would know that they were to go see Thaimy. *Id*. In any event, it is clear that the list

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 1:14-cv-24245-RNS

was not based on employees who had allegedly threatened wage and hour claims and had nothing to do with same. *Id.* Rather, it was based on the arbitration agreement and all cabin employees who had not yet signed it. *Id.* As such, Mora's allegation regarding the list is irrelevant and insufficient to survive summary judgment. Moreover, Mora admits that Eulen never told him that he was being fired due to his allegedly threatened wage and hour claim. *See* Statement of Material Facts ¶ 12.

### ii.      Fernando Aguila

Plaintiff Fernando Aguila concedes that he has no evidence that his discharge was due to his allegedly threatened wage and hour claim. *See* Statement of Material Facts, ¶14. Instead, Aguila merely makes the conclusory allegation that "it was known that was the reason." *Id.* Mere circular reasoning fails to provide support for his claim. Aguila testified as follows:

> Q.    Do you have any evidence that you were discharged for threatening to or filing a lawsuit against Eulen?
> A.    No. Everything was verbal.
> Q.    Did anyone say anything verbal to you that the reason they were discharging you was because you filed a lawsuit?
> A.    They never said it was because of the lawsuit, but it was known that was the reason.

*Id.* Mr. Aguila's opinion that "it was known that was the reason," i.e., that his allegedly threatened wage and hour claim was purportedly the reason for his termination, is pure speculation and is not evidence. What is more, Aguila concedes that no one at the company ever told him that he was being terminated because of his allegedly threatened wage and hour claim. Indeed, no evidence exists to establish that Plaintiffs were terminated in retaliation for their allegedly threatened wage and hour claim.

Although Plaintiffs can try to claim that the company's decision to terminate them was unfair, unwise, or incorrect, they cannot claim, and certainly cannot prove, that they were terminated because of their allegedly threatened wage and hour claim.  Instead of fulfilling a lawful requirement of their employment, Plaintiffs have decided to raise allegations of FLSA retaliation without any foundation.  Plaintiffs' failure to meet their burden by not showing *but for* causation is alone sufficient to grant summary judgment.

>   **d.    There Was A Protracted Delay Between The Allegedly Threatened Wage And Hour Claim And Plaintiffs' Terminations Indicating Lack Of Causation.**

As a matter of law, timeframes of three or more months between the protected activity and the adverse action are too remote for the Court to infer causation. *Sabatier v. Suntrust Bank*, 2008 WL 108796 (S.D. Fla. 2008) (citing *Wascura v. City of S. Miami,* 257 F.3d 1238, 1248 (11th Cir.2001) (rejecting retaliation claim because three-and-a-half months was too long to find a retaliatory connection)); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11 Cir. 2007) (finding that a three to four month disparity between the statutorily protected expression and the adverse employment action is insufficient to establish causal connection) (citing *Richmond v. ONEOK,* 120 F.3d 205, 209 (10th Cir. 1997) (holding 3 month period insufficient) and *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (7th Cir.1992) (holding 4 month period insufficient)). Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law. *See Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004) (citing *Wascura v. City of South Miami,* 257 F.3d 1238, 1248 (11th Cir. 2001)).

Here, the allegedly threatened wage and hour claim was made on May 21, 2014, in correspondence from attorney Camar Jones. *See* Statement of Material Facts, ¶5. However, Plaintiffs Diaz, Pena, Raudales, Rey, Mora, Gonzalez, Zelaya, Rodriguez and Aguila were not terminated until September 2-3, 2014, more than three months later. *See* Statement of Material Facts, ¶9. Thus, pursuant to the above-referenced law, this over three-month disparity between the alleged protected activity and the adverse action is too long to find a retaliatory connection. Indeed, the substantial delay between attorney Camar Jones' letter and Plaintiffs' terminations indicates a lack of causation and results in the failure of the retaliation claim as a matter of law.

>   **2.    The Company's Termination of Plaintiffs For Failure To Sign The Arbitration Agreement Was Not Retaliatory**

The company's termination of Plaintiffs Diaz, Pena, Raudaules, Rey, Mora, Gonzalez, Zelaya, Rodriguez, and Aguila for failure to sign the arbitration agreement was not retaliatory under *Reheiser v. Terminix Intern. Co., L.P.*, 509 F. Supp. 2d 1147 (N.D. Fla. 2007) because Plaintiffs rejected multiple opportunities to comply with the company's mandate and retain their employment. In *Reheiser*, the plaintiff-employee complained to his employer, the defendant, of

Case No.: 1:14-cv-24245-RNS

disability-based harassment. *Id*. at 1149. Subsequently, all employees were required to sign an arbitration agreement or face termination. *Id*. at 1150. The plaintiff was terminated after he refused to sign the arbitration agreement. *Id*. The plaintiff then sued the employer for discrimination and retaliation. *Id*. the plaintiff argued that "the arbitration requirement was applied to him as retaliation because of his complaints about the harassment and discrimination, ultimately resulting in his termination." *Id*. at 1156. The defendant-employer, Terminix, moved for summary judgment and argued that it had a legitimate, non-pretextual reason for terminating Reheiser, i.e., his adamant response that he would not sign the arbitration agreement. The court granted summary judgment in favor of *Terminix* and held that the plaintiff's refusal to sign an agreement requiring mandatory arbitration of claims brought by employees against the employer was not a pretext for discrimination or retaliation. *Id*. at 1157. In so holding, the court reasoned:

> There is no evidence in the record to suggest Terminix would have terminated Reheiser if he had signed the document. In fact, he was asked to "rethink" his decision to not sign before he was finally terminated, evidencing a clear intent (on Terminix's part) to provide Reheiser with a final opportunity to comply with the company's mandate and retain his employment. Unfortunately, Reheiser rejected that opportunity. Thus, Reheiser's retaliation claim must fail.

*Id*. at 1157-58.

Here, like in *Terminix,* Plaintiffs allegedly made a complaint of violation of law, were subsequently required to sign an arbitration agreement, and were terminated for not signing. The Plaintiffs in this case were given multiple opportunities to sign the arbitration agreement, which they rejected. *See* Statement of Material Facts, ¶ 8. As in *Terminix*, this evidences a clear intent on Defendants' part to provide Plaintiffs with a chance to comply with the company's mandate and retain their employment. Like the plaintiffs in *Terminix*, the Plaintiffs in this case rejected the opportunities provided by Defendant to retain their employment. There is no evidence to suggest that Plaintiffs would have been terminated if they signed the arbitration agreement. Thus, like the court in *Terminix*, this Court should conclude that Plaintiffs' retaliation claim fails and grant summary judgment in favor of Defendants.

### 3.   *Goldsmith v. Bagby Elevator* Is Inapplicable To This Case

In *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261 (11th Cir. 2008), an employee sued his employer for retaliation in violation of Title VII. Bagby Elevator hired Goldsmith, a black man, to work in its shop in Birmingham, Alabama, as an elevator fabricator. *Id*. at 1258.

Case No.: 1:14-cv-24245-RNS

On October 5, 2001, Goldsmith filed an EEOC charge alleging that Bagby Elevator discriminated against him on the basis of race. *Id.* at 1271. In November 2001, Bagby Elevator responded to Goldsmith's EEOC charge and to other EEOC charges filed by Goldsmith's coworkers. *Id.* On June 6, 2002 Bagby Elevator gave Goldsmith a document entitled "Dispute Resolution Agreement," which was an agreement to arbitrate all "past, present, and future" claims against Bagby Elevator. *Id.* Goldsmith was instructed that he had to sign and return the agreement by the next day. *Id.* Bagby Elevator required all employees to sign the agreement. *Id.* Goldsmith refused to sign the agreement and was fired. *Id.* On May 2, 2003, Goldsmith filed a lawsuit against his employer, alleging racial discrimination, wrongful termination, and retaliatory termination. *Id.* at 1274-75. The Eleventh Circuit Court of Appeals held that the employee's immediate termination for his refusal to sign the agreement established a causal relation between the filing of his charge of discrimination and his termination. *Id.* at 1278. In so holding, the court reasoned that the employer failed to prove a nonretaliatory reason for the employee's termination. *Id.* at 1279.

The above-captioned case is distinct from *Goldsmith*, rendering it inapplicable. First, unlike *Goldsmith*, there was no actual claim in the case at hand. As set forth above, the Plaintiffs in this case were not named plaintiffs in the lawsuit filed against Defendants in June of 2014, nor was any class certified or even moved for in that matter. The letter from their attorney, Mr. Jones, was merely a threat, not an actual claim. *See* Statement of Material Facts ¶5. Unlike the employer in *Goldsmith*, Eulen has articulated legitimate, non-retaliatory reasons for terminating Plaintiffs, rendering the same decision defense applicable. In this regard, Plaintiffs Diaz, Pena, Raudaules, Rey, Mora, Gonzalez, Zelaya, Rodriguez, and Aguila were terminated solely for their refusal to sign a company-wide mandatory arbitration agreement. *See* Statement of Material Facts ¶ 9; *see also* section, "B" below.  The court further reasoned that the employer was not entitled to prevail on the same decision defense, i.e., that it would have terminated the employee regardless of whether any unlawful factor played a role in its decision, because such defense requires evidence of a legitimate, nondiscriminatory reason. *Id. Goldsmith* can further be distinguished from the instant case because in *Goldsmith*, the plaintiff and other  employees that were terminated for not signing the arbitration agreement had pending claims against their employer at the time of termination. *Id.* at 1278-79. By contrast, in the case at bar, there was at least one other employee who was terminated for refusing to sign the agreement during the same

Case No.: 1:14-cv-24245-RNS

timeframe as Plaintiffs who did <u>not</u> have a pending or threatened wage claim at the time of termination, namely, Olga Linares.[3] This shows that unlike the employer's policy in *Goldsmith*, Eulen's policy was equally applied to all employees, including those without an allegedly threatened wage claim. Thus, the factual circumstances in this case are distinguishable from those of *Goldsmith*. As such, *Goldsmith* does not apply in this instance.

**B.   Even if Plaintiffs Could Establish a Prima Facie Case, Defendants Have Articulated A Non-Retaliatory Reason For Their Terminations.**

Even if Plaintiffs could somehow establish a prima facie case of FLSA retaliation, which they cannot, Eulen's assertion of a legitimate, non-retaliatory reason for terminating Plaintiffs rebuts any inference of retaliation raised. *See generally, Ash v. Sambodromo, LLC*, 2009 WL 3856367 at 10 (S.D. Fla. 2009); *Bythewood v. Unisource Worldwide, Inc.,* 413 F. Supp. 2d 1367, 1372 n. 2 (N.D. Ga. 2006); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

Although the employer's explanation of its legitimate reasons must be clear and reasonably specific, its burden is only one of production, not persuasion, and is relatively light. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981) (explaining employer's burden of production "can involve no credibility assessment"); *Holifield v. Reno*, 115 F. 3d 1555, 1564 (11th Cir. 1997) (noting intermediate burden is "exceedingly light"). In that regard, the employer "need not persuade the court that it was actually motivated by the proffered reasons." *Combs v. Plantation Patterns,* 106 F. 3d 1519, 1528 (11th Cir. 1997); *Hartsel v. Keys,* 87 F. 3d 795 (6th Cir. 1996) (holding "[i]t is important to note that the [employer] need not prove a non-discriminatory reason for [discharging the employee] but need merely articulate a valid rationale.") (citations omitted).

Defendants have met their "exceedingly light" burden of production. The undisputed facts establish that Eulen's terminations of Plaintiffs were based on a legitimate, non-retaliatory reason. Indeed, Plaintiffs Diaz, Pena, Raudaules, Rey, Mora, Gonzalez, Zelaya, Rodriguez, and Aguila were terminated solely for their refusal to sign a company-wide mandatory arbitration agreement, which is permissible under the law. *See* Statement of Material Facts ¶9.

Regardless, the employer does not have to establish that the discharge was justifiable. *See generally, Brennan v. Reynolds & Co.*, 367 F. Supp. 440 (N.D. Ill. 1973). Employers still retain their traditional right to terminate employees for legitimate business and economic

---

[3] Defendants maintain that Plaintiffs' allegedly threatened wage claim was not a "pending" claim.

Case No.: 1:14-cv-24245-RNS

reasons. *Pericich v. Climatrol*, *Inc.*, 523 So. 2d 684, 685 (Fla. 3d Dist. App. 1988). Indeed, "civil rights laws do not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Jones v. Bessemer Carraway Medical Center,* 137 F. 3d 1306, 1311 (Ala. 1998). The employer's reason for an adverse employment action does not have to be one of which the court or jury would approve, and "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Comm.*, 738 F. 2d 1181 (11th Cir. 1984); *see also Etienne v. Muvico Theaters, Inc.*, 2003 U.S. Dist. LEXIS 14036, at *39 (S.D. Fla. Mar. 11, 2003) ("the fact that an employer's decision might have been unwise or based on erroneous facts does not give rise to a Title VII employment discrimination claim"); *Jones v. Winn-Dixie Stores, Inc.,* 75 F. Supp. 2d 1357, 1366 (S.D. Fla. 1999) ("[w]hether or not the employer turns out to be right about the employee's conduct is not relevant, as long as the discipline was not based on discriminatory animus"). An employer "can fire an employee [even] if it is mistaken about the misconduct it believes the employee committed." *Padron v. BellSouth Telecomms.*, Inc., 196 F. Supp. 2d 1250, 1258 (S.D. Fla. 2002).

Based on the above law, even if a jury disagrees with Eulen's decision to require the execution of an arbitration agreement as a condition of employment, finds same to be poorly reasoned or based on inaccurate facts, or otherwise disagrees with Eulen's decision to terminate Plaintiffs Diaz, Pena, Raudaules, Rey, Mora, Gonzalez, Zelaya, Rodriguez, and Aguila, same is irrelevant, and does not negate Eulen's articulated non-retaliatory reason, namely, refusal to sign the arbitration agreement.

**C.     Plaintiffs Have Not and Cannot Demonstrate Any Evidence That Eulen's Reason For Their Terminations, Namely, Refusal To Sign The Arbitration Agreement, Was Pretextual, And That The Real Reason Was Their Allegedly Threatened Wage And Hour Claim.**

Pretext means that the employer lied or "made up" the reason, and does not honestly believe the reason it offers. *Jones,* 137 F. 3d at 1313 n.11 (citations omitted); *Silvera v. Orange County School Board,* 244 F. 3d 1253, 1261 (11th Cir. 2001) (*citing, Wolf v. Buss Am. Inc.,* 77 F. 3d 914, 919 (7th Cir. 1996) (explaining that "[p]retext means more than a mistake on the part of the employer; pretext 'means a lie', specifically a phony reason for some action")). A reason is not pretext for discrimination "unless it is shown both that the reason was false, and

COLE, SCOTT & KISSANE, P.A.
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 1:14-cv-24245-RNS

that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Restated, to constitute pretext, the reason for the adverse action must be a farce. Plaintiffs have not and cannot proffer any evidence, let alone "significantly probative evidence," that Eulen's proffered explanations for their decisions to terminate them is a pretext for intentional FLSA retaliation, namely, that the reasons for their terminations were false, or that retaliation was the real reason.

Plaintiffs Diaz, Pena, Raudales, and Rey concede that they have no evidence that they were terminated in retaliation for purportedly threatening to pursue a wage and hour claim against Defendants. *See* Statement of Material Facts ¶ 13. Thus, it is clear that they lack any evidence of pretext, resulting with their claims failing. The only allegation advanced by Plaintiff Osmar Rodriguez that he apparently believes evidences pretext is that it was unfair for Eulen to terminate him for not signing the arbitration agreement. *See,* Statement of Material Facts ¶ 16. However, merely disputing the propriety of Eulen's reason for terminating him does not suffice to constitute pretext. Osmar Rodriguez's dispute regarding the fairness of his termination for not signing the arbitration agreement and his and the other Plaintiffs' dispute of the propriety of Eulen's reason for terminating them will not suffice to escape summary judgment. As for the conclusory allegations of retaliation advanced by Mora and Aguila, as set forth above, they are based solely on speculation and conjecture, are uncorroborated, and are insufficient to survive summary judgment. As the Eleventh Circuit and other courts have noted, mere conclusions, unsupported factual allegations, speculation, and conjecture are insufficient to show that a defendant's explanation is a pretext for retaliation. *See generally, Isenbergh v. Knight-Ridder Newspaper Sales, Inc*., 97 F. 3d 436, 443-44 (11th Cir. 1996) ("[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext . . . where [an employer] has offered ... evidence of legitimate . . . reasons for its actions"); *Sturniolo v. Sheaffer*, *Eaton, Inc*., 15 F. 3d 1023, 1026 (11th Cir. 1994) (a discharged employee's mere suspicion of discrimination, unsupported by personal knowledge of discrimination, will not constitute pretext). *Moses v. Am. Nonwovens, Inc.,* 97 F. 3d 446 (11th Cir. 1996); *Texas Department of Community Affairs,* 450 U.S. 248, 256 (1981) (holding that although Plaintiff may attempt to generally assert that the reasons proffered by the Firm for his adverse employment action were pretextual, mere conclusory allegations and assertions will not suffice); *McMillian v. Svetanoff,* 878 F. 2d 186 (7th Cir. 1989) (finding plaintiff's subjective belief that defendant was

Case No.: 1:14-cv-24245-RNS

biased insufficient to create genuine issue of material fact to overcome motion for summary judgment).

To be sure, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer.  *See generally, Beck v. City of Haleyville, Ala.,* 127 F. Supp. 2d 1109, 1209 (N.D. Ala. 2001) (citing *Lee v. GTE Florida*, 226 F. 3d 1249, 1253 (11th Cir. 2000); *Combs,* 106 F. 3d 1519, 1543.   Significantly, "[t]he pretext inquiry is concerned with the decision-maker's perception, not the employee's own beliefs;"*Moore,* 683 F. 3d 1321, 1323 n.4 (explaining that an employer's good faith belief determination is not pretext, even if incorrect).

In this regard, it is not for Plaintiffs or the Court to sit as a "super-personnel" department and second-guess the wisdom of the decision.  *Chapman v. AI Transport,* 229 F. 3d 1012, 1030 (11th Cir. 2000) (holding that Federal Courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practice, no matter how high-handed its decisional process, no matter how mistaken a firm's managers, the ... [law] does not interfere). As stated by the Eleventh Circuit:

> we must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees. The factual issue to be resolved is not the wisdom or accuracy of [the employer's] conclusion that [the Plaintiff] was an unsatisfactory employee. We are not interested in whether the conclusion is a correct one, but whether it is an honest one. Like all Title VII cases where pretext is an issue, the question the fact finder must answer is whether [the employer's] proffered reasons were a cover-up for a ... discriminatory decision… We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.

*See generally, Rojas v. State of Fla.,* 285 F. 3d 1339, 1342 (11th Cir. 2002) (emphasis added) (affirming grant of summary judgment for employer, and further holding "[t]his kind of inquiry – whether a business decision is wise or nice or accurate - is precluded…") (internal citations and quotations omitted).

Importantly, "an employer may [take an employment action] for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix,* 738 F. 2d 1181.  *See generally, Moore, 683 F. 2d 1321, 1323 n.4 (explaining that an employer's good faith belief determination is not pretext, even if incorrect).*

- 17 -

Case No.: 1:14-cv-24245-RNS

*See Etienne,* 2003 U.S. Dist. LEXIS 14036, at *39 ("the fact that an employer's decision might have been unwise or based on erroneous facts does not give rise to a Title VII employment discrimination claim"); *Jones,* 75 F. Supp. 2d at 1366 ("[w]hether or not the employer turns out to be right about the employee's conduct is not relevant, as long as the discipline was not based on discriminatory animus"). An employer "can [take adverse employment action] if it is mistaken about the misconduct it believes [was] committed." *Padron*, 196 F. Supp. 2d at 1258.

It follows from the above law that even if it is determined that Eulen's decision to terminate Plaintiffs was poorly reasoned, based on inaccurate facts, or otherwise incorrect, such will not suffice to establish pretext and defeat summary judgment because the company honestly believed in good faith that its decisions were correct based on Plaintiffs Diaz, Pena, Raudales, Rey, Rodriguez, Aguila, Mora, Gonzalez, and Zelaya's refusal to sign a company-wide, mandatory agreement, discussed in detail throughout this Motion.

In sum, Plaintiffs failed to offer any evidence that Eulen's reason for terminating them were pretextual and the true reason was their allegedly threatened wage and hour claim. *See generally Lee v. Mid-State Land & Timber Co., Inc.*, 285 Fed. Appx. 601 (11th Cir. 2008). Plaintiffs cannot create a genuine factual issue to "rebut head on" Eulen's legitimate, non-retaliatory reason for its decision to terminate them and show that its decision was merely pretext for retaliation. Instead, Plaintiffs appear determined to substitute their business judgment for Eulen's by arguing that they should not have been terminated.  Thus, Plaintiffs' retaliation claim fails as a matter of law.  *See generally Philips v. Aaron Rents, Inc.*, 262 Fed. Appx. 202 (11th Cir. 2008).

## CONCLUSION

Plaintiffs cannot establish a prima facie case of FLSA retaliation because their allegedly threatened wage and hour claim was not the "but for" reason for Eulen's decision to terminate them.  Further, the undisputed facts establish that Eulen made the decision to terminate Plaintiffs Diaz, Pena, Raudales, Rey, Rodriguez, Aguila, Mora, Gonzalez, and Zelaya based on a legitimate, non-retaliatory reason, namely, their failure to sign the arbitration agreement, which was lawful, and Plaintiffs cannot establish, and have offered no facts, that such reasons were pretextual. Accordingly, in applying the undisputed material facts to the relevant law, no rational fact-finder could conclude that Plaintiffs' allegedly threatened wage and hour claim played any role in their terminations, and summary judgment should be awarded to Defendants.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 1:14-cv-24245-RNS

WHEREFORE, for the reasons detailed above, Defendants respectfully request that this Honorable Court enter an Order granting their Motion for Summary Judgment, and for whatever further relief this Court deems equitable and proper.

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendants
Esperante Building
222 Lakeview Avenue, Suite 120
Telephone: 561-383-9236
Facsimile:  561-683-8988

By: /s/ Nicole Wall
    NICOLE WALL
    FBN: 17430
    E-Mail: nicole.wall@csklegal.com
    ALISON THOMAS
    FBN: 102879
    E-Mail: alison.thomas@csklegal.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 1st day of September, 2015, we electronically filed the foregoing document with the Clerk of Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Nicole Wall
    NICOLE WALL
    FBN: 17430
    E-Mail: nicole.wall@csklegal.com

**SERVICE LIST**
J.H. Zidell, Esq.
J.H. Zidell, P.A.
Attorneys for Plaintiffs
300 71st Street
Suite 605
Miami Beach, FL  33141
Zabogado@aol.com
*VIA CM/ECF*

l:\0342-0026-00\retaliation matter\pleading\motion\motion - for summary judgment as to ten plaintiffs.docx