**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 14-24245-CV-SCOLA/OTAZO-REYES**

ISMAEL RODRIGUEZ DIAZ, *et al.*,      )
                                        )
                 Plaintiffs,            )
        vs.                             )
                                        )
AMERICAN  SALES  AND  MANAGEMENT        )
ORGANIZATION, LLC, *et al.,*            )
                                        )
                 Defendants.            )
_____

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, by and through their undersigned attorney, hereby file Plaintiffs' Motion for

Summary Judgment under Fed.R.Civ.P. 56(c), seeking summary judgment in regard to liability

against Defendants in regard to Plaintiffs' claims of retaliation, and state as follows:

[Continued on the Following Page]

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I. <u>INTRODUCTION</u>

The parties agree that the sole reason that nine of the twelve Plaintiffs in this action were fired was because these Plaintiffs refused to arbitrate their prior claims.  This is retaliation under the FLSA *as a matter of law*, requiring no further fact finding.  Learned counsel for Defendants will no doubt put forth a valiant opposition; however, this matter is simply not a close call for nine of the twelve Plaintiffs.  As described by binding 11th Circuit precedent in <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261, 1279 (11th Cir. 2008), requiring employees under penalty of termination to arbitrate their pre-existing claims is *inherently* retaliation when the employer has had notice that there is a pre-existing dispute.

All of the parties agree to the facts necessary for a finding of summary judgment on behalf of nine of the Plaintiffs in this action.  Plaintiffs and Defendants agree that the following nine Plaintiffs were fired for not executing an arbitration agreement, which would have eliminated the Courts' jurisdiction to adjudicate their previous claims of overtime under the FLSA:

 (1) Fernando Aguila;

 (2) Ismael Rodriguez Diaz;

 (3) Amaury Gonzalez;

 (4) Yanaris Pena;

 (5) Jose Alberto Raudales;

 (6) Lieng Un Rey;

 (7) Osmar Rodriguez;

 (8) Jose E. Mora Yera; and

 (9) Carlos Zelaya.

These nine Plaintiffs shall be referred to throughout the remainder of this motion as the "Nine."

Defendants only bring an alternate justification for the firing of three plaintiffs, whom are

thereafter referred to as the "Three":

> (10) Pedro Pablo Galindo Gutierez, who was allegedly terminated due to a failure to find an article within an aircraft pursuant to his job duties on June 11, 2014;

> (11) Pedro Lantigua Gomez who was allegedly terminated due to a failure to find an article within an aircraft pursuant to his job duties on June 11, 2014; and

> (12) Jose Luis Caballero who was allegedly terminated because an alleged problem with regarding a failure to inspect his vehicle for damage on July 14, 2014.

This justification is bogus – Defendants' own e-mails show that the Defendants originally agreed

to a suspension as the appropriate remedy for these alleged shortcomings. These suspensions

only became retroactive terminations when Livan Acosta intervened and used the incidents as

pretext.

Plaintiffs assert that there can be no genuine dispute of material fact that there is liability

on behalf of Defendants for the cause of action of retaliation.  As will be explained below, these

parties suffered the three elements of retaliation because they:

> (a) engaged in a protected activity under the FLSA by having their attorneys send a demand letter for overtime under the FLSA;

> (b) suffered the adverse action of termination; and

> (c) a causal connection existed between the adverse action of termination and the protected activity, because the parties were terminated for the express purpose of not agreeing to send their pre-existing overtime claims into individualized arbitration.

Once these elements are met to create a *prima facie* case under the *McDonnell Douglas*

retaliation analysis used by the 11th Circuit, the Court then turns to whether the employer can

provide a "nonretaliatory reason" for the adverse action, after which the employee could

challenge by claiming that this is a pretext for the retaliatory reason.

For the Nine, none of the dispositive facts are disputed at all – the Nine were terminated

for not agreeing to arbitrate individually their preexisting claims.  The Court does not need to

consider any analysis of pretext, because a discharge for this reason is inherently a retaliatory reason under <u>Goldsmith</u>. There are facts that the parties both agree to, and clear binding 11th Circuit precedent on the application of those facts.

As for the remaining Three, it is a closer call – at least in the context of a summary judgment motion.  Plaintiffs assert this "for cause" termination for the remaining three Plaintiffs is only a pretext, evidenced by Defendants' e-mails which changed the punishment from suspension to termination.

## II. BACKGROUND AND UNDISPUTED FACTS

### (a) The Arbitration Agreement Decision

Plaintiffs began employment with Defendants at times ranging from January 19, 2009 until January 29, 2013 *see* Statement of Material Facts ("SoMF") ¶¶ 1-12.  During all relevant time periods in this action, Cindy Tunon was in charge of human resources in the United States for Defendants. SoMF ¶ 13.  Thaimy Diaz was her subordinate, and handled human resources at Miami International Airport. SoMF ¶15.   Livan Acosta was the Vice-President of Operations until July 2014, and managed much of the affairs of Defendants.  SoMF ¶ 16.

Defendants retained attorney Mark Beutler, Esq. who provided representation and advise regarding labor disputes and issues.  SoMF ¶ 18. Defendants corresponded and met numerous times on how to limit their liability in labor disputes. SoMF ¶ 18.  Mark Beutler was charged with handling all aspects of the roll out of the arbitration agreement.  SoMF ¶ 23. Included in these discussions was an e-mail from Mr. Beutler on June 22, 2012 in which he noticed, "[a] jury trial waiver may cause a plaintiff's attorney to go fishing elsewhere, or settle cheap."

On August 23, 2013, employees of Defendants filed a collective action complaint for overtime against Defendants in <u>Palmer v. American Sales and Management Organization, LLC</u>,

case no. 1:13-cv-23053-JEM.  SoMF ¶ 17. Plaintiffs were represented by Camar Jones, Esq. of the Shavitz Law Group, P.A.  The Complaint sought similarly situated employees of Defendants to be brought into the litigation.

By January of 2014, the decision to implement the arbitration agreement and jury trial waiver had been made.  SoMF ¶ 20.  On January 14, 2014, the Defendants discussions regarding limiting their liability had moved towards including an arbitration agreement to fulfill these goals. "The litigation over class certification (which can be the majority of the cost of litigation) is eliminated.  The number of claimants who need to be paid a settlement is much fewer. Once the bigger players in Miami's plaintiff's bar learn that Eulen America disputes must be arbitrated, they may stop taking those cases."  "But if we are not ready to go with the arbitration agreement, <u>do not hold up the jury trial waiver</u>."  That same day, Ms. Tunon responded to Mr. Beutler and gave him the go-ahead to draft the agreement.

On January 28, 2014, Mr. Beutler sent another e-mail SoMF ¶ 21, describing:

Per your instructions, I wrote an arbitration agreement with a class action waiver. These agreements basically work to eliminate class actions.  They can have retroactive effect, i.e., they can be used to apply to existing claims as well as claims that arise in the future.  But it will be very difficult, but perhaps not impossible, to have the arbitration agreement apply to pending litigation.  The case law is not favorable, but the following plan <u>may</u> work and steer around the existing bad precedent.  I caution that the proposal skates over numerous complexities of class litigation law, and this plan is untested.

The plan would be to roll out the arbitration agreement and <u>require</u> all employees to sign as a condition of employment.  With respect to employees who might join the lawsuit, we could include an option that permits them without penalty to limit the reach of the arbitration agreement to exclude the pending litigation.  That litigation would be described in some detail.  Otherwise the court is more likely to hold that the agreement is unenforceable as to the pending litigation (which the court might do anyway).[1]

[…]

---

[1] This e-mail was heavily redacted and Plaintiffs have not had the opportunity to review it.

The question then becomes who should get this supplemental information: (a) everybody asked to sign the agreement, (b) everyone in Miami, or (c) everyone in the plaintiffs' job classifications.  This is very dicey because we do not know what the proposed class will be.  The definition in the complaint is essentially useless.  The court may not like this very much.  It is very complicated.

[...]

I have attached a draft arbitration agreement.  If we want it to apply to pending litigation, we will have to modify it to make that explicit.

**(b) The Arbitration Agreement**

The arbitration agreement at issue in this litigation is the same draft which was presented by Mr. Beutler to Defendants in January, 2014.  SoMF ¶ 22.  The arbitration agreement did not carve out preexisting claims.  Critically, all claims "now in existence" where explicitly required to be arbitrated:

> [T]his Agreement is intended to cover any dispute now in existence or arising in the future out of or related to Employee's employment.

SoMF ¶ 21-22.  Further, the arbitration agreement has a provision which is *intended* to stop workers from enforcing their rights under the FLSA by removing the economic incentives.

> HOWEVER, THE COMPANY DOES NOT CONSENT, AND EMPLOYEE SHALL HAVE NO RIGHT OR AUTHORITY, TO HAVE ANY DISPUTE ARBITRATED AS A CLASS OR COLLECTIVE ACTION, NOR SHALL EMPLOYEE HAVE ANY RIGHT OR AUTHORITY TO JOIN ANY SUCH ACTION. FURTHER, THE ARBITRATOR SHALL HAVE NO RIGHT TO CERTIFY, CONSOLIDATE, OR COLLECTIVELY ARBITRATE MULTIPLE INDEPENDENT CLAIMS.

*See* id.

**(c) The "Roll Out" of the Arbitration Agreement**

In late February of 2014, Defendants began to prepare for the roll out of the arbitration agreement.  On or about March of 2014, Defendants began to roll out the agreement by requiring all employees to sign the Arbitration Agreement.  SoMF ¶¶ 24-25.

On April 7, 2014 Mark Beutler sent an e-mail to Defendants' agents Cindy Tunon and Livan Acosta saying:

> I realize that you are all working very hard at this. But as I told you, the plaintiffs' law firm (the Shavitz group) is seeking to obtain a list of persons and contact information for persons who worked in the same work groups as the plaintiffs. Shavitz and Company filed a motion to compel this evening. I dragged out the discussions as long as I could.
>
> The only rationale that makes any sense for why this information is sought is that the Shavitz law group wants to set up their next case, and try to do a very large collective action. This is how they do business. That is why this case has been so difficult to settle. I have done my best, and may prevail yet, at keeping the names and contact information out of the greedy hands of plaintiffs' lawyers. But the law is on their side. I may have to cough up the information. Further, I already produced the exception logs, which contain the names and jobs of various persons. But there is no contact information.
>
> **That is why it is imperative that we continue the efforts to get the arbitration agreements which contain the class action waivers signed by as many persons as possible.** [emphasis added].

On May 5, 2014, the <u>Palmer v. American Sales and Management Organization, LLC</u>, litigation was settled at mediation.

On May 21, 2014 at 11:07 a.m., Camar Jones as counsel for thirty additional employees of Defendants, including Plaintiffs, delivered a letter to Defendants' counsel, Mark Beutler.  This letter asked Mr. Beutler to request that Livan Acosta, a general manager with Defendants to stop contacting these aggrieved employees and attempting to intervene in the resolution of their claims.  SoMF ¶ 26.  This e-mail was reviewed by Cindy Tunon.  Tunon Deposition, p. 27, l. 4-20, and subsequently forwarded and discussed with other decision makers of Defendants. Tunon Deposition, p. 40-42.

That very same day, at 5:35 p.m., Mark Beutler wrote an e-mail[2] to a partner within his firm, Michael W. Casey, III, saying that "Livan says he is at 83 percent roll out now" of the arbitration agreements, "I told him to get to 100% asap.  He said he needs 10 days.  I told him

---

[2] This e-mail was redacted by Defendants and Plaintiffs have not seen an unredacted copy.

and Cindy that roll out needs to happen at other stations too."  Mr. Casey responded at 6:20 p.m.
that "Agree that they should push the agreements out ASAP.  Everywhere."  This response was
forwarded to Human Resources agent for Defendants, Cindy Tunon at 6:27 p.m.

On May 23, 2014, Camar Jones sent an e-mail identifying the 36 employees that he
represented and referred to in the May 21, 2014 letter in the form of a numbered list.  Fernando
Aguila at 1, Ismael Rodriguez Diaz at 7, Amaury Gonzalez at 11,Yanaris Pena at 25, Jose
Alberto Raudales at 27, Lieng Un Rey at 35, Osmar Rodriguez at 30, Jose E. Mora Year at 19,
Carlos Zelaya at 36, Pedro Pablo Galindo Gutierez at 10, Pedro Lantigua Gomez at 13, and Jose
Luis Caballero at 3. SoMF ¶ 27.

On May 27, 2014 Mr. Beutler advised Ms. Tunon in an e-mail to get all current
employees signing the arbitration agreement upon threat of termination.  On June 4, 2014, Mr.
Beutler sent another e-mail to Ms. Tunon.  He stated that, "we need to explain to the 'non-
signers' that beginning on such and such a date, they will not be permitted to report to work until
the signed agreement is in hand."

During the Summer of 2014, Defendants went about their roll out of the arbitration
agreement.  Thaimy Diaz procured the signatures of as many people as she could at Miami
International Airport.  There were holdouts – Plaintiffs did not want to execute the arbitration
agreement.  Ms. Diaz would note the holdouts down and periodically report to her supervisor,
Ms. Tunon, about the status of the execution of the collective action waiver and arbitration
agreement.

Pedro Pablo Galindo Gutierez and Pedro Lantigua Gomez were the first to go.  On June
11, 2014, there was an item which was purportedly missed by the cleaning crew of the American
Airlines. SoMF ¶ 32-33.  Blame was put on Mr. Galindo and Mr. Gomez and they were

suspended by their supervisor.  Id.  After Mr. Acosta was advised about the incident over e-mail, he changed the remedy from a suspension into a termination.  Id.  Mr. Acosta was aware of their outstanding claim and they had not executed the arbitration agreement.

Jose Luis Caballero was next to go.  On July 14, 2014 he allegedly did not report a scratch on the vehicle that he drove.  *See* Incident Report Attached to Statement of Facts.  This resulted in a disciplinary three day suspension.  Id.   A month and ten days later, this three day suspension mysteriously retroactively turned into a termination without explanation. *See* Caballero E-mail Correspondence and separation report dated September 16, 2014.

Defendants could not come up with a justification for terminating the Nine, and thus fired them for refusing to sign the company's new mandatory arbitration agreement on September 2 and September 3, 2014.  SoMF ¶ 34-36.  Affidavit of Thaimy Diaz at § 4, p.2 [DE 85-13]; Affidavit of Marisela Rafuls, § 5, p. 3 [DE 85-14]; Affidavit of Thaimy Diaz § 4 [DE 87-14]; Affidavit of Marisela Rafuls §§ 4-7.

On September 3, 2014, all employee terminations for failing to execute an arbitration agreement were stopped.  SoMF ¶ 34-36.  Current employees are no longer required to execute the arbitration agreement; only new employees are now required to execute the arbitration agreement.  Tunon Deposition, p. 97, l. 8-10; p. 107, l. 2-3.   Affidavit of Thaimy Diaz § 5 [DE 87-14].

## III.   ARGUMENT

### (a) Summary Judgment Standard

Summary Judgment is appropriate when   "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir.1999).

Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir.1999). The non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). A jury must reasonably be able to find for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.

### (b) **FLSA Retaliation**

The Fair Labor Standards Act contains provisions to protect employees from retaliation when they complain not receiving overtime pay. The FLSA states: "it shall be unlawful for any person—[…]to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to  be instituted any proceeding under or related to this chapter,[…]"  29 U.S.C. § 215.

This rule is integral with the statutory scheme as a whole – individuals are encouraged to enforce their right to overtime.  "[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 73, 126 S. Ct. 2405, 2418, 165 L. Ed.

2d 345 (2006), *quoting* Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960) ("Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances.").

The analysis of an FLSA retaliation claim first begins with the Plaintiff making a *prima facie* case.

> "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: (1) [the plaintiff] engaged in activity protected under [the] act; (2)[he] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action."

Wolf v. Coca–Cola Co., 200 F.3d 1337 (11th Cir.2000); *see Meeks v. Computer Associates Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994); *see also* Obregon v. Jep Family Enterprises, Inc., 710 F. Supp. 2d 1311, 1314 (S.D. Fla. 2010).

If a *prima facie* case is made, then Defendants have an opportunity to rebut by showing a legitimate reason for the termination.  "If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext."  Wolf, 200 F.3d at 1342-43; *see* Reich v. Davis, 50 F.3d 962, 965–66 (11th Cir.1995).  This shifts the burden back to Plaintiffs "to demonstrate that the proffered non-retaliatory reason is a pretext."  Suchite v. Kleppin, 819 F. Supp. 2d 1284, 1293 (S.D. Fla. 2011), *citing* Wolf v. Coca–Cola Co., 200 F.3d 1337, 1342–43 (11th Cir.2000). In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights."  Wolf, 200 F.3d at 1342-43; *see* Reich v. Davis, 50 F.3d 962, 965–66 (11th Cir.1995).

This analysis is the same whether the complaint is about discrimination through Title VII or overtime through the FLSA.   "In the Eleventh Circuit, retaliation claims under the FLSA are analyzed under the burden-shifting framework employed by courts in cases brought under Title VII of the Civil Rights Act." Johnson v. Advertiser Co., 778 F. Supp. 2d 1270, 1277 (M.D. Ala.

2011), *citing* <u>Wolf</u>, 200 F.3d at1342–43 (11th Cir.2000); *see also* <u>Suchite v. Kleppin</u>, 819 F. Supp. 2d 1284, 1293 (S.D. Fla. 2011) *("*Retaliation claims under the FLSA are analyzed using the familiar *McDonnell Douglas* framework applied to retaliation claims under Title VII, the ADEA and the ADA.")

There can be little doubt that the first two elements of retaliation occurred.  For the first element of "protected activity" – the Defendants received an e-mail correspondence from Camar Jones of Shavitz Law Group describing that the Plaintiffs retained the Shavitz Law Group in regard to a wage and hour complaint.   Defendants admit and acknowledge that Plaintiffs were subsequently fired, fulfilling the second "adverse action" element.  The only element which can reasonably be disputed is the third element of "causal connection" between "employees' activity and the adverse action."

### (1) Element One of Retaliation – "Protected Activity"

The protected activity sufficient for the first element occurred when Camar Jones notified counsel for Defendants that Plaintiffs had an overtime complaint.  While that statute suggests that retaliation is limited to the actual filing of the Complaint, this is not actually a requirement. Instead, the United States Supreme Court has described that a litigant must only provide, "fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation."  <u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>, 131 S. Ct. 1325, 1334 (2011).[3]

---

[3] "As such, the phrase 'filed any complaint' contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." <u>Kasten v. Saint-Gobain Performance Plastics Corp.</u>, 131 S. Ct. 1325, 1334 (2011).  Prior to <u>Kasten</u>, there was a circuit split as to whether an "oral" complaint qualified to create antiretaliation protections. Ross, Scott C. (2012) "How on Earth Can You Possibly "File" an Oral Complaint?: An Analysis of the Boundaries of § 215(A)(3) of the Fair Labor Standards Act," ST. JOHN'S LAW REVIEW: Vol. 84: Iss. 4, Article 7 (available at: http://scholarship.law.stjohns.edu/lawreview/vol84/iss4/7).

Idle water-cooler griping and abstract grumblings are not enough (<u>Valerio v. Putnam Associates Inc.</u>, 173 F.3d 35, 44 (1st Cir. 1999)), but emails (<u>Driscoll v. George Washington Univ.</u>, 42 F. Supp. 3d 52, 60 (D.D.C. 2012)), informal complaints (<u>Dearmon v. Texas Migrant Council, Inc.</u>, 252 F. Supp. 2d 367, 368 (S.D. Tex. 2003)) and informal complaints, (<u>E.E.O.C. v. White & Son Enterprises</u>, 881 F.2d 1006, 1011 (11th Cir. 1989) are enough.  *See also* <u>Debrecht v. Osceola County</u>, 243 F.Supp.2d 1364, 1374 (M.D.Fla.2003); *see* <u>McKenzie v. Renberg's Inc.</u>, 94 F.3d 1478, 1486–87 (10th Cir.1996) ("In order to engage in protected activity under [the FLSA] , the employee must ... file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.").

There can be no doubt that an e-mail prepared by an attorney representing aggrieved employees regarding FLSA claims is sufficiently "official" to trigger the first element of "protected activity."  The communication is from legal counsel to legal counsel, specifically refers to "wage and hour" issues, and mentions the parties by name.

### (2) Element Two of Retaliation – "Adverse Action"

The FLSA specifically refers to "discharge" as an adverse action.  29 U.S.C. § 215. Plaintiffs and Defendants agree that every Plaintiff was terminated from employment.  Thus, the second element has been met by the Plaintiffs' termination.

### (3) Element Three of Retaliation – "Causal Connection" between "Protected Activity" and "Adverse Action"

The third element of "causal connection" between the "protected activity" and the "adverse action" is a low burden which is met as long as the Plaintiffs can show any connection between the protected activity and the adverse action at all.

"[The 11th Circuit Court of Appeals do not] construe the 'causal link' in the [retaliatory discharge] formula to be the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277-78 (11th Cir. 2008). Instead, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Id.; Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998), citing E.E.O.C. v. Reichhold Chem., Inc., 988 F.2d 1564, 1571–72 (11th Cir.1993); Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir.1985). This linkage can be found upon a mere showing of a close temporal proximity between the adverse action and the protected activity. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir.2004).

As this third element applies to this case, there is a clear causal connection between the terminations and Plaintiffs' protected grievances. The arbitration agreement would have divested this Court from adjudicating Plaintiffs' prior claims *and* prevented the claims from all being tried together. It is undisputed that all Plaintiffs were presented with this arbitration agreement, refused to sign it, and were subsequently terminated. For the Nine, this is a clear causal connection between the adverse action and the protected activity. For the remaining Three, circumstantial evidence and temporal proximity shows that the arbitration agreement and their discharge are not so unrelated as to fail this third element.

### (4) Burden Shifting After Prima Facie Case

Once the three elements of a *prima facie* case of retaliation have been shown by the Plaintiffs, a presumption of retaliation exists. "After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." Summers v. Winter, 303 F.

App'x 716, 719-20 (11th Cir. 2008).  If the employer offers legitimate reasons, "the presumption of retaliation disappears." Id. citing Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir.1999). "An employee may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find [those reasons] unworthy of credence." Summers, 303 F. App'x at 720, citing Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1258 (11th Cir.2001).

Thus, it would normally be Defendants' objective to provide a legitimate non-retaliatory reason for a termination once a *prima facie* case is shown.  This would then shift the burden back to Plaintiffs to show that it was this proffered reason was a mere pretext.  For the Nine, however, there is no proffered legitimate and non-retaliatory reason at issue.   The reason proffered by Defendants for the Nine is *inherently retaliatory* and thus no burden-shifting need occur.

Arbitration agreements are tools used by employers in order to limit claims of their employees in wage disputes.  They are inherently retaliatory when the threat of termination is used to induce employees into arbitrating preexisting disputes.  To explain, this Motion describes below (a) how the arbitration agreement was used by Defendants to limit employees' abilities to invoke the protections of the FLSA, (b) analyzing how a mandatory, retroactive, post-dispute arbitration agreement is inherently retaliatory by comparing the seminal Weeks and Goldsmith cases, and (c) how, even if such an arbitration agreement was *not inherently* retaliatory, the facts show a very clear causal link between the protected activity and the adverse action (thus, Plaintiffs would be able to show retaliation even if the burden shifted to them to show pretext).

(a) <u>The Arbitration Agreement was Designed to Prevent Adjudication</u>

Arbitration agreements and collective action waivers are used by businesses to limit how their employees can defend their overtime rights. These are not agreed to because the parties simply think that arbitration is just a great way to resolve their disputes.

Collective action waivers in arbitration, while lawful (<u>Walthour v. Chipio Windshield Repair, LLC</u>, 745 F.3d 1326, 1336 (11th Cir.) cert. denied, 134 S. Ct. 2886, (2014)), are strongly criticized as allowing parties in stronger bargaining positions to immunize themselves from the consequences of their conduct. Arbitration agreements can be drafted to negate the economic viability of causes of action, particularly when the ability to file collective or class actions is barred. <u>Am. Exp. Co. v. Italian Colors Rest.</u>, 133 S. Ct. 2304, 2313 (2013) (Justs. Kagan, Ginsburg, and Breyer Dissent).

This is particularly repugnant when dealing with employees and employers in overtime wage disputes, because the right to overtime is supposedly unwaivable under the FLSA. Yet, employees can essentially waive their right to overtime through the dispute resolution system that an employer demands that employees comply with. While these arbitration agreements do not cause an employee to outright lose their rights, an employer can force the employees to comply with an arbitration schema that causes the adjudication process to be so uneconomical that employees will never be able to enforce their rights. *See* Julius Getman and Dan Getman, *Winning the FLSA Battle: How Corporations Use Arbitration Clauses To Avoid Judges, Juries, Plaintiffs, and Laws*, St. John's Law Review: Vol. 86: Iss. 2, Article 5 (2014) (available at: http://scholarship.law.stjohns.edu/lawreview/vol86/iss2/5/); *see also* Carmen Comsti, *A Metamorphosis: How Forced Arbitration Arrived in the Workplace*, 35 Berkeley J. Emp. & Lab. L. (2015) (available at: http://scholarship.law.berkeley.edu/bjell/vol35/iss1/2).

Arbitration agreements implemented after a dispute has arisen has been considered to be unconscionable by this Circuit.  Billingsley v. Citi Trends, Inc., 560 F. App'x 914, 918 (11th Cir. 2014) describes a strikingly similar circumstance to this one.  In Billingsley, several managers were involved in a lawsuit with the company.  Id.  In an attempt to stop additional managers from joining this lawsuit, the employer required that all managers execute an arbitration agreement at a meeting under threat of termination.  Id.   No managers actually ended up being fired, thus there are no retaliation claims; however, the 11th Circuit Court of Appeals opined on employers using their unequal bargaining power to divest workers of their rights under the FLSA.  Id.

"Congress passed the FLSA to protect workers from overbearing practices of employers who had greatly unequal bargaining power over their workers. Congress has expressed a policy that FLSA plaintiffs should have the opportunity to proceed collectively."  Id. at 920, *citing* Roland Elec. Co. v. Walling, 326 U.S. 657, 668 n. 5 (1946) and Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 173, (1989).  The 11th Circuit agreed that the employer's action in requiring potential co-plaintiffs to sign an arbitration agreement under threat of termination when there was pending litigation was so *unconscionable* that the court did not need to enforce it. Billingsley v. Citi Trends, Inc., 948 F. Supp. 2d 1287, 1294 (N.D. Ala. 2013) aff'd, 560 F. App'x 914 (11th Cir. 2014).

In this action, the e-mail correspondences between the decision making parties and their counsel show unequivocally that Defendants are trying to make it more expensive employees to bring their claims so they stop trying to do it.  This is solely for the sake of saving Defendants money.  Defendants specifically discussed, and could have exempted, prior claims from the arbitration agreement but chose not to do so.  Instead, when Defendants were advised that the Plaintiffs were claiming overtime wages, the Defendants redoubled their efforts and began to

implement a policy where employees that did not agree to arbitrate their prior claims would be terminated.

> (b) *Weeks* and *Goldsmith* Describe the Standard of How Post-dispute Arbitration Agreements are Retaliatory

By comparing the 11th Circuit Court of Appeal cases of Weeks v. Harden Manufacturing Corp., 291 F.3d 1307 (11th Cir. 2002) and Goldsmith v. Bagby Elevator Co., 513 F.3d 1261 (11th Cir. 2008)[4], we can have a clear understanding of what is and is not allowed in regard to retaliatory terminations in regard to the refusal to consent to arbitration of disputes.

In Weeks, the employee was suing for retaliation because he was discharged after failing to agree to arbitrate any *future* disputes with the company.  291 F.3d at 1311. "The district court found that although the arbitration provision may have been lawful, the plaintiffs reasonably, albeit mistakenly, believed that the arbitration provision was unenforceable. The court therefore held that plaintiffs' refusal to sign the arbitration policy was protected activity and the discharge of the plaintiffs constituted actionable retaliation."  Id.  The 11th Circuit disagreed.  The court thoroughly reviewed court precedent and found that "an unenforceable arbitration agreement does not amount to an unlawful employment practice under the federal employment discrimination laws." Id. at 1316.

When the matter of mandatory arbitration agreements were revisited in Goldsmith, the reasoning of Weeks was clarified.  Goldsmith, 513 F.3d 1261.  Goldsmith described that Weeks came out the way it did was because the employee in Weeks did not have any pending protected activity.  Id. at 1278.  The defining difference between Goldsmith and Weeks is that the

---

[4] Goldsmith may be the first case ever tried which involves an employer terminating employees who refused to sign away their *prior* disputes in arbitration.  Miranda Fleschert, *Elevator Company Goes down: Mandatory Arbitration Provisions as Applied to Pending Civil Rights Claims in the Employment Context*, 2008 J. DISP. RESOL. (2008) ("[P]rior to *Goldsmith*, no court had addressed the issue of whether an employer can force an employee to sign an arbitration provision that applies to existing claim of discrimination […]").

employee in <u>Goldsmith</u> had a pending claim of discrimination pending – a protected activity.  <u>Id.</u>

The employee in <u>Goldsmith</u> was being required to sign an arbitration agreement that would have

mandated the arbitration of "past, present, and future" claims.  <u>Id.</u>

> "[The employee] argues that his immediate termination for his refusal to sign the agreement established a causal relation between his protected activity—the filing of his charge of discrimination—and his termination. We agree. [The employee] was terminated immediately after and because he refused to sign an agreement that would have applied to his pending charge. [The employee] was willing to agree to arbitrate any future charges, but [the employer] insisted that he sign an agreement that covered his pending charge. [The employer] does not dispute that [the employer's agent] was aware of [the employee's] EEOC charge when [the employee's agent] terminated [the employee] and that [the employee] was the only employee who had a charge of discrimination pending when [the employer] required all of its employees to sign the agreement."

<u>Id.</u> at 1278. "Unlike the plaintiffs in <u>Weeks</u>, it is undisputed that Goldsmith had a pending EEOC

charge when he was required to sign an agreement that applied to that charge."  <u>Id.</u>

> <u>Goldsmith</u> goes as far as to explain:
>
> [The employer] contends that it was entitled to a judgment as a matter of law based on its legitimate nonretaliatory reason for [the employee's] termination, but again this argument misses the mark. [The employer] failed to prove a *nonretaliatory* reason for Goldsmith's termination. **[The employer] stated that its reason for [the employee's] discharge was his refusal to sign the agreement, but that reason is retaliatory**. The agreement would have affected [the employee's] continued pursuit of his pending charge of discrimination [emphasis added].

<u>Id.</u> at 1279.

Just like in <u>Goldsmith</u>, the Plaintiffs in this matter were required to sign an arbitration

agreement after making an overtime claim under threat of termination.  Just like in <u>Goldsmith</u>,

this arbitration agreement and class action waiver would have applied to pending claims.  Just

like in <u>Goldsmith</u>, the Plaintiffs refused to sign the agreement and were fired for it.  There are no

distinguishing facts for this Court to find a different result in this case than what was held in

<u>Goldsmith</u>.  Every employee in <u>Goldsmith</u> had to sign the arbitration agreement, even though it

was only the plaintiff that was retaliated against because only he had the pre-existing claim.  It made no difference whether everyone had to sign the agreement.

Firing an employee for refusing to arbitrate or waive his rights to bring a suit collectively for preexisting claims is retaliation as a matter of law.  No further analysis is necessary, and this Court should find summary judgment exists for retaliation on behalf of the Nine.

(c) <u>The Undisputed Facts Show an Undeniable Causal Link Between Termination and Protected Activity</u>

These necessary facts have already been established and are not in dispute.  This is enough for summary judgment to be entered for liability for Plaintiffs (1)-(9).  Nevertheless, other facts have been brought to light which are the metaphorical "icing on the cake" – facts which unequivocally show that retaliation occurred for all Plaintiffs (1)-(12).

Defendants purposefully drafted the Arbitration Agreement and collective action waiver for the express purpose of stopping Plaintiffs and other employees with similar claims from exercising their right to overtime.  Defendants considered making the arbitration agreement and collective action waiver to be prospective only – but they chose not to.

The e-mail correspondences involving Mr. Beutler described above show that Defendants were well aware of the consequences of the choice they were presenting to the Plaintiffs. Defendants threatened Plaintiffs livelihood: either Plaintiffs could agree to drop their attempts to adjudicate their FLSA rights in this Court, or they find themselves without a job.  It is undisputable that this was a knowing and purposeful attempt to exploit Defendants' own workers.  Defendants even went beyond <u>Goldsmith</u> by forcing each overtime dispute to be arbitrated in a separate action – further making adjudication prohibitively unpalatable to any lawyer who might champion the employees' cause.

For the remaining Three – the supporting documents show that they were originally suspended and were all retroactively terminated for their actions.  This paints a clear picture of pretextual intent to rebut the Defendants alleged nonretaliatory purpose behind the discharge.

These facts and the Defendants' intent as described in Defendants' e-mail communications bridge the gap between Plaintiffs' FLSA claims and their eventual termination.

IV.    CONCLUSION

Plaintiffs and Defendants agree to all of the same facts in regard to the Nine.  The Nine were required to execute an arbitration agreement and collective action waiver which would have eliminated their claims.  Defendants knew about these claims, and did in fact terminate Plaintiffs for refusing to waive these procedural rights. There can be no genuine issue of material fact at issue, and thus, summary judgment should be entered pursuant to 11th Circuit binding precedent in Goldsmith.  As for the remaining Three – Defendants own documents reveal their retaliatory motive.  Summary Judgment should be entered pursuant to Fed.R.Civ.P. 56.

*Wherefore Plaintiffs request that this Court enter Judgment in favor of Plaintiffs for their claim of retaliation for liability only.*

Respectfully submitted this first day of September, 2015.

J.H. Zidell, P.A.
Attorney for Plaintiffs
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167

By:  /s/ Elizabeth O. Hueber
Elizabeth O. Hueber
Florida Bar No.: 0073061

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

September 1st, 2015 on all counsel or parties of record on the Service List below.

___/s/Elizabeth O. Hueber___
Elizabeth O. Hueber, Esq.
Fla. Bar No. 0073061
J.H. Zidell, P.A.
Attorney for Plaintiff
300 71st Street #605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865 – 7167

<u>SERVICE LIST</u>

Nicole M. Wall
Cole, Scott, & Kissane, P.A.
1645 Palm Beach Lakes Blvd.
2nd Floor
West Palm Beach, FL 33401
561-383-9236
Fax: 561-683-8977
Email: Nicole.Wall@csklegal.com
*Attorney for Defendants:*
*American Sales and Management*
*Organization, LLC,*
*Eulen America, Inc.,*
*Livan Acosta*