UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:14-cv-24245-RNS

ISMAEL RODRIGUEZ DIAZ, et al.,

    Plaintiffs,

v.

AMERICAN SALES AND MANAGEMENT
ORGANIZATION, LLC, a Florida limited
liability company, EULEN AMERICA, INC.,
and LIVAN ACOSTA,

    Defendants.
_____/

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants American Sales and Management Organization, LLC, Eulen America, Inc., and Livan Acosta, by and through their undersigned counsel, and hereby file this Response to Plaintiffs' Motion for Summary Judgment (D.E. 88) and, in support thereof, state as follows:

### I.  Introduction

This matter stems from Plaintiffs' claim that Defendants retaliated against them in violation of 29 U.S.C. § 215(a)(3) by terminating them due to an allegedly threatened wage and hour claim.  *See* D.E. 87, ¶ 11. As discussed below, the law and undisputed facts conclusively demonstrate that Defendants complied with the FLSA and did not retaliate against Plaintiffs in violation of same.  As such, Plaintiffs' Motion for Summary Judgment should be denied.

*[Continued On The Following Page]*

Case No.: 1:14-cv-24245-RNS

## II.  MEMORANDUM OF LAW

**A.  Plaintiffs Cannot Establish a Prima Facie Case of FLSA Retaliation Because There Is No Causal Connection Between Plaintiffs' Allegedly Threatened Wage and Hour Claim And Their Terminations.**

In demonstrating causation in a case for retaliatory discharge under the FLSA, a plaintiff must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights. *Alvarado v. I.G.W.T. Delivery Sys., Inc.,* 410 F. Supp. 2d 1272, 1278-79 (S.D. Fla. 2006); *see also Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000); *Poole v. City of Plantation, Fla.*, 188 L.R.R.M. (BNA) 3425 (S.D. Fla. 2010). Specifically, the Eleventh Circuit has held that the plain language of the FLSA, which makes it unlawful for an employer to fire an employee "because the employee asserted rights protected under the statute," requires that a FLSA retaliation plaintiff show that "but for" such assertion of rights, the adverse action would not have occurred. *Id.*

The evidence obtained in the subject case reflects that Plaintiffs' allegedly threatened wage and hour claim was not any, let alone the "but for," reason for their terminations. *See* D.E. 86, page 6. Specifically, the three Plaintiffs ("the Three") were terminated solely as a result of poor job performance and violation of company policy in connection with same, and the nine Plaintiffs ("the Nine") were terminated for not signing the company's mandatory arbitration agreement. *See* D.E. 85 ¶ 8. In this regard, the Nine concede they were terminated due to their refusal to sign Eulen's company-wide mandatory arbitration agreement. *Id*. Additionally, Plaintiffs Diaz, Pena, Raudales, Rey, Aguila, Mora, and Rodriguez admit that either they have no evidence that they were terminated in retaliation for their allegedly threatened wage and hour claim, or their allegations are based solely on speculation. *Id*. Finally, the protracted delay between their allegedly threatened wage and hour claim and their terminations indicates a lack of

retaliation. *Id.* Thus, there is no "clear causal connection" between Plaintiffs' allegedly threatened wage and hour claim and their terminations.

### 1. There Is No Causal Connection Between The Three's Allegedly Threatened Wage and Hour Claim And Their Terminations.

The Three allege that *"circumstantial evidence"* shows that the arbitration agreement and their discharge are related. *See* Plaintiffs' Motion for Summary Judgment D.E. 88 ("Motion"), page 14. The alleged circumstantial evidence of the causal connection between the alleged protected activity and adverse action is that they were "originally suspended" then "retroactively terminated," which purportedly "paints a clear picture of pretextual intent…" *See* Motion, page 21. However, the fact that the Three were suspended before they were ultimately terminated does not show, let alone suggest, pretext. The suspension and termination simply reflect different stages of the decision-making process. The Three urge this Court "to do nothing more than second-guess a business decision made by [their employer]," which is impermissible. *See Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002).

With respect to Galindo and Lantigua, the record clearly reflects that they were terminated after they failed to perform a proper and thorough security search of an aircraft. *See* D.E. 84, page 7. What is more, this improper security search was not the first time that Galindo and Lantigua had an issue with a security search of an aircraft. *Id.* Specifically, Galindo and Lantigua had previously been written up due to TSA (Transportation Security Administration) having reported unsatisfactory issues in connection with their search of a plane. *Id.* The write up stated that they would be re-trained on interior search procedures and that failure to improve would result in suspension or termination. *Id.* Based on the above instances, Eulen lost confidence in their ability to perform their jobs properly and decided to terminate Galindo and Lantigua. *Id.* These performance issues assessed by Eulen were the sole reasons for their

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 1:14-cv-24245-RNS

terminations. As for Caballero, Plaintiffs Motion erroneously states that Caballero's "suspension mysteriously retroactively turned into a termination without explanation." To the contrary, the documents in Caballero's employee file set forth the reasons for separation and show that an explanation was given, i.e., failure to report damage to a company vehicle, and unsafe driving. *See* D.E. 89, pages 95-96.

Although the Three can try to claim that Eulen's decisions were unfair, unwise, or incorrect, they cannot claim, and certainly cannot prove, that they were terminated because of their alleged wage and hour claim. Indeed, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer. *See generally, Beck v. City of Haleyville, Ala.,* 127 F. Supp. 2d 1109, 1209 (N.D. Ala. 2001) (citing *Lee v. GTE Florida*, 226 F.3d 1249, 1253 (11th Cir. 2000); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997). Importantly, an allegation of pretext "ordinarily will fail" when an employer makes a decision based on an employee's performance or conduct. *See generally, Smith v. Horner*, 839 F.2d 1530, 1538 (11th Cir. 1988). A plaintiff's loose allegations that his performance or conduct was acceptable are insufficient to establish than an employer's proffered reason is pretextual, especially in the face of documented deficiencies. *Beck v. City of Haleyville, Ala.,* 127 F. Supp. 2d 1197, 1209 (N.D. Ala. 2001) (citing *Lee v. GTE Florida*, 226 F.3d 1249, 1253 (11th Cir. 2000). Thus, Eulen's legitimate, non-retaliatory reason for the termination of the Three stands unscathed by any pretext evidence.

Case No.: 1:14-cv-24245-RNS

### 2. There Is No Causal Connection Between The Nine's Allegedly Threatened Wage and Hour Claim And Their Terminations.

Plaintiffs' Motion asserts that: "*all Plaintiffs were presented with this arbitration agreement, refused to sign it, and were subsequently terminated. For the Nine, this is a clear causal connection between the adverse action and the protected activity.*" See Motion, page 14, (emphasis added). Plaintiffs' argument fails for the following reasons. First, Plaintiffs Motion alleges that the protected activity in this case occurred when Plaintiffs' attorney, Camar Jones, notified Defendants' previous attorney, Mark Beutler, in letters dated May 21, 2014 and May 23, 2014, that he had been retained to represent 36 of Defendants' employees, including Plaintiffs, for wage and hour matters. See Motion, page 12. However, Plaintiffs' terminations have no relation whatsoever to the alleged protected activity. In this regard, Plaintiffs' Motion itself acknowledges that the company made the decision to implement the arbitration agreement in January of 2014, over four (4) months before it even received Mr. Jones's letters in May of 2014, and that it began to roll out the agreement to *all* employees in March of 2014, over two (2) months before it received said letters. See Motion, pages 5-6 (emphasis added). Thus, there cannot be and is no causal connection between the allegedly threatened wage claim and the terminations of the Nine, there is no basis for their assertion that Eulen's articulated reason for terminating them is pretextual. Plaintiffs' Motion further alleges that "Defendants could not come up with a justification for terminating the Nine, and thus fired them for refusing to sign the company's new mandatory arbitration agreement." See Motion, page 9. Plaintiffs appear to be suggesting here that Defendants really terminated the Nine because of their allegedly threatened wage and hour claim. However, the Nine were terminated over three months after the allegedly threatened wage and hour claim was made. See D.E. 86, page 11. This over three-month

Case No.: 1:14-cv-24245-RNS

disparity between the alleged protected activity and the terminations is too long to find a retaliatory connection and results in the failure of the retaliation claim as a matter of law. *Id.*

> **B.** **Eulen's Termination Of The Nine For Refusing To Sign The Arbitration Agreement Was Not Retaliatory.**

Defendants' termination of the Nine for refusing to sign the arbitration agreement is not retaliatory under *Reheiser v. Terminix Intern. Co., L.P*., 509 F. Supp. 2d 1147 (N.D. Fla. 2007) because Plaintiffs rejected multiple opportunities to comply with the company's mandate and retain their employment. *See* D.E. 86, page 11. Eulen's terminations of the Nine were based on a legitimate, non-retaliatory reason, namely, their refusal to sign a company-wide mandatory arbitration agreement, which is permissible under the law.

Plaintiffs' reliance on *Goldsmith v. Bagby Elevator Co., Inc*., 513 F.3d 1261 (11th Cir. 2008) is misplaced because the above-captioned case is distinct from *Goldsmith*, rendering it inapplicable. Unlike *Goldsmith*, there was no actual claim in the case at hand, as the Plaintiffs in this case were not named plaintiffs in the lawsuit filed against Defendants in June of 2014, nor was any class certified or even moved for in that matter. *See* D.E. 86. The letter from their attorney, Mr. Jones, was merely a threat, not an actual claim. *Id*. Moreover, unlike the employer in *Goldsmith*, Eulen has articulated a legitimate, non-retaliatory reason for terminating Plaintiffs, which renders applicable the same decision defense, i.e., that it would have terminated the employee regardless of whether any unlawful factor played a role in its decision. *Id.* The same decision defense requires evidence of a legitimate, nondiscriminatory reason, which was provided in this case, as discussed above. *Id.* Further, in the case at bar, there was at least one other employee who was terminated for refusing to sign the arbitration agreement during the same timeframe as Plaintiffs who did <u>not</u> have a pending or threatened wage claim at the time of

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Case No.: 1:14-cv-24245-RNS

termination, namely, Olga Linares.[1] *Id.* This shows that unlike the employer's policy in *Goldsmith*, Eulen's policy was equally applied to all employees, including those without an allegedly threatened wage claim. *Id.* Thus, the factual circumstances in this case are distinguishable from those of *Goldsmith*, which does not apply in this instance.

### C. The Arbitration Agreement Is Lawful.

Plaintiffs' Motion alleges that "when Defendants were advised that the Plaintiffs were claiming overtime wages, the Defendants redoubled their efforts and began to implement a policy where employees that did not agree to arbitrate their prior claims would be terminated." *See* Motion, pages 17-18. As discussed herein, Plaintiffs' Motion itself acknowledges that the company made the decision to implement the arbitration agreement in January of 2014, over four (4) months *before* it received Mr. Jones's letters in May of 2014, and that it began to roll out the agreement to *all* employees in March of 2014. *See* Motion, pages 5-6 (emphasis added). Thus, the arbitration agreement was implemented well before the company received notice of Plaintiffs' allegedly threatened wage claim, and is unrelated to same.

Plaintiffs' Motion further alleges that "Defendants purposefully drafted the Arbitration Agreement and collective action waiver for the express purpose of stopping Plaintiffs and other employees with similar claims from exercising their right to overtime." *See* Motion, page 20. This allegation is nonsensical because Plaintiffs' Motion acknowledges that the arbitration agreement at issue in this litigation is the same draft prepared in January of 2014, which was well before Defendants received Mr. Jones's letters in May of 2014. *See* Motion, page 6.

Plaintiffs' Motion also contains the outrageous allegation that "[d]efendants purposefully drafted the Arbitration Agreement and collective action waiver for the express purpose of

---

[1] Defendants maintain that Plaintiffs' allegedly threatened wage claim was not a "pending" claim.

Case No.: 1:14-cv-24245-RNS

stopping Plaintiffs and other employees with similar claims from exercising their right to overtime" in a "knowing and purposeful attempt to exploit Defendants' own workers." *See* Motion, Page 20. However, it is not an unlawful employment practice under federal employment discrimination laws for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment discrimination statutes. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005). Compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes. *Id.* Arbitration agreements encompassing claims brought under federal employment discrimination statutes have also received near universal approval. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1313 (11th Cir. 2002).

Plaintiffs' Motion cites to *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 918 (11th Cir. 2014) in support of the absurd allegation that Defendants used their "unequal bargaining power to divest workers of their rights under the FLSA." *See* Motion, page 17. In *Billingsley*, the court found that the employer-defendants' communications with the putative class of store managers were "highly coercive" and warranted corrective action by the court in the form of refusing to enforce the arbitration agreement when defendants held private meetings with store managers to discuss the new arbitration agreement and forced them to sign the agreement under threat of possible termination. A similar argument was alleged by the plaintiffs in *Czopek v. TBC Retail Group, Inc.*, 2014 WL 5782794 at 5 (M.D. Fla. 2014) where the court considered the defendant employer's motion to compel arbitration. In the motion, the defendant stated that the plaintiffs executed binding arbitration agreements which prevented them from participating in a collective action alleging FLSA violations. The plaintiffs argued that the arbitration agreements

Case No.: 1:14-cv-24245-RNS

should not be enforced because they were coerced to sign them, and relied on *Billingsley* in support of such argument. The *Czopek* court rejected the plaintiffs' argument, noting that the arbitration agreement was drafted and its distribution planned well in advance of the defendant's receipt of the plaintiff's demand letter, was presented to all employees, and distributed before a lawsuit was filed. *Czopek* at 5. Like in *Czopek*, the arbitration agreement in this case was drafted and distributed well in advance of Mr. Jones's May 2014 letters and was presented to all employees. Thus, like the court in *Czopek,* this court should conclude that the issue is not controlled by *Billingsley*. As such, no rational fact-finder could conclude that Plaintiffs' allegedly threatened wage and hour claim played any role in their terminations.

### III.    Conclusion

The law and undisputed facts conclusively demonstrate that Defendants complied with the FLSA and did not retaliate against Plaintiffs in violation of same. As such, Plaintiffs' Motion for Summary Judgment should be denied.

WHEREFORE, Defendants request that this Court deny Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendants
Esperante Building
222 Lakeview Avenue, Suite 120
Telephone: 561-383-9236
Facsimile:  561-683-8988

By: /s/ Alison Thomas_____
    NICOLE WALL
    FBN: 17430
    E-Mail: nicole.wall@csklegal.com
    ALISON THOMAS
    FBN: 102879
    E-Mail: alison.thomas@csklegal.com

Case No.: 1:14-cv-24245-RNS

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this 18th day of September, 2015, we electronically filed the foregoing document with the Clerk of Court using CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Alison Thomas_____
ALISON THOMAS
FBN: 102879
E-Mail: alison.thomas@csklegal.com

**SERVICE LIST**
J.H. Zidell, Esq.
J.H. Zidell, P.A.
Attorneys for Plaintiffs
300 71st Street
Suite 605
Miami Beach, FL  33141
Zabogado@aol.com
*VIA CM/ECF*