UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-24245-CV-SCOLA/OTAZO-REYES

ISMAEL RODRIGUEZ DIAZ, *et al.*,　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　　　　　)
　vs.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
AMERICAN SALES AND MANAGEMENT　)
ORGANIZATION, LLC, *et al.*,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　　　)
_____

**PLAINTIFFS' OPPOSITION TO DEFENDANTS AMERICAN SALES AND MANAGEMENT ORGANIZATION, LLC, EULEN AMERICA, INC., AND LIVAN ACOSTA'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW AS TO CLAIM ASSERTED BY PLAINTIFFS ISMAEL RODRIGUEZ DIAZ, YANARIS PENA, JOSE RAUDALES, LIENG UN REY, JOSE MORA, AMAURY GONZALEZ, CARLOS ZELAYA, OSMAR RODRIGUEZ, JOSE CABALLERO, AND FERNANDO AGUILA**

Plaintiffs by and through their undersigned attorney hereby oppose the Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law as to the Motion for Summary Judgment filed September 1, 2015 [DE 86] and state as follows:

MEMORANDUM OF POINTS AND AUTHORITIES

I.　INTRODUCTION

This memorandum is in response to Defendants' second Motion for Summary Judgment which seeks to attack the basis of all of Plaintiffs' retaliation claims.  Plaintiffs sought Summary Judgment on the identical issues in its Motion for Summary Judgment [DE 88], and touched further on them in response [DE 97] to Defendants first Motion for Summary Judgment [DE 87]. Because these cross motions and responses touch on identical issues, Plaintiffs request that arguments for these motions and responses all be considered together in consideration of all three Motions for Summary Judgment outstanding, for the purposes of economy and brevity.

II. A<small>RGUMENT</small>

This Opposition seeks to address the particular arguments brought up in Defendants' second Motion for Summary Judgment by (a) generally addressing Defendants' misconception about the McDonnell Douglass analysis, thus undermining the premise of the majority of Defendants' Summary Judgment Motion; (b)(1) showing how direct evidence in fact exists to show retaliation; (b)(2) showing that circumstantial evidence support retaliation under the McDonnell Douglass analysis; (c) explaining the significance of temporal proximity as it relates to circumstantial evidence; and (d) explaining the real distinction between Goldsmith and Terminix.

    a. The Foundation of the *McDonnell Douglass* Test Differs from Defendants' Explanation

Defendants valiantly defend their position in light of undisputed facts which show retaliation as a matter of law. At first blush, their arguments are very reasonable – but a deeper analysis of McDonnell Douglas and its progeny reveal that the very premise for Defendants' Motion does not accurately state the law. Defendants twist the McDonnell Douglass test to the point that it would be nearly an impossible burden to show retaliation unless the Defendants revealed their dastardly plan as it unfolded through "direct evidence." The McDonnell Douglass burden-shifting framework exists because it is difficult to show direct evidence of an illegal reason for termination. It allows circumstantial evidence to create a link between protected activity and an adverse action. When the origin and purpose of McDonnell Douglass is explored, it should be clear that the general foundation of Defendants' Motion for Summary Judgment has no merit.

To understand the direct evidence/indirect evidence distinction of McDonnell Douglass analysis requires a look the reasoning of why it was created by the Supreme Court. In

McDonnell Douglass, the plaintiff was seeking redress because he claimed that he was not hired by the employer because of his race; however, prior to his attempt to be hired, he protested the defendant by illegally obstructing traffic during morning rush hour in front of the employer's property. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973). The plaintiff claimed that the failure to re-hire him was discriminatory. Id. This puts the court into a tough position in creating policy. A person with discriminatory motive is not going to formally declare that they are being discriminatory.[1] Almost all claims of discrimination are based *only* on circumstantial evidence.[2]

This creates a major evidentiary problem. A court cannot leap inside the head of the decision-maker to see if he had illegal reasons. If the court was too permissive, it would invite all kinds of lawsuits and bad acts. "We are unable to conclude that Congress intended to compel employers to retain persons in their employ regardless of their unlawful conduct,—to invest those who go on strike with an immunity from discharge for acts of trespass or violence against the employer's property." Id.

So, a good legal test would be able to find a way to separate cases where there was a legitimate claim of illegal termination, which usually was only supported by circumstantial evidence, from those cases where there was legal and legitimate motivation. Hence, the McDonnell Douglas burden shifting analysis was created.

---

[1] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 534 (1993) (Souter, J., dissenting) ("employers who discriminate are not likely to announce their discriminatory motive"); Ann Clarke Snell & Lisa R. Eskow, What Motivates the Ultimate Decision maker? An Analysis of Legal Standards for Proving Causation and Malice in Employment Retaliation Suits REV BAYLOR L. REV. 381, 396 (1998).

[2] Ann Clarke Snell & Lisa R. Eskow, What Motivates the Ultimate Decision maker? An Analysis of Legal Standards for Proving Causation and Malice in Employment Retaliation Suits, 50 Baylor L. Rev. 381, 396 (1998); Edward T. Ellis & Suzanne 0. Rudder, Current Developments in the Law of Retaliation, A.L.I.-A.BA. Course of Study, Current Developments in Employment Law 241, 257 (July 27, 2000).

As the process goes, Plaintiff makes a *prima facie* case, Defendant gets a chance to rebut that with a legitimate reason, and Plaintiff gets a chance to show that Defendant's reasons are pretextual.  *See* Wolf v. Coca-Cola Co.,, 200 F.3d 1337, 1342-43 (11th Cir. 2000).  "[T]he entire purpose of the McDonnell Douglas prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by."  Price Waterhouse v. Hopkins, 490 U.S. 228, 271(1989) (O'Connor, J., concurring).  This is burden shifting analysis designed to find a reasonable balance in consideration of the fact that plaintiffs almost always can only rely on circumstantial evidence. Mark S. Brodin, The Demise of Circumstantial Proof in Employment Discrimination Litigation: St. Mary's Honor Center v. Hicks, Pretext, and the "Personality' Excuse, 18 BERKLEY J. EMP. & LAB. L. 183, 192 (1997).

The McDonnell Douglas test only makes sense and is implemented when the case is about circumstantial evidence.  "When, […] a plaintiff does not present any direct evidence of retaliatory discharge, circumstantial evidence may be evaluated under the burden shifting framework articulated in McDonnell Douglas Corp. v. Green…"  Raspanti v. Four Amigos Travel, Inc., 266 F. App'x 820, 822 (11th Cir. 2008); *see also* Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1331 (11th Cir. 1998)("When a plaintiff offers circumstantial evidence to prove a Title VII claim, we use the analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green…") *see also* Centeno v. I & C Earthmovers Corp., 970 F. Supp. 2d 1280, 1291 (S.D. Fla. 2013)

If an aggrieved employee had direct evidence of a retaliatory motive, then a court would not have to go through the process of burden shifting.  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any

inference or presumption." Standard, 161 F.3d at 1330, *citing* Carter v. City of Miami, 870 F.2d 578, 580–81 (11th Cir.1989).

> b. Plaintiffs can Prevail on Summary Judgment and Overcome Defendants with Either Direct or Circumstantial Evidence

Defendants' Motion for Summary Judgment gives the impression that this Court must go through the McDonnell Douglas framework and must also only consider direct evidence. Instead, retaliation can be found when *either* direct evidence shows retaliation *or* circumstantial evidence does so under the McDonnell Douglas framework.

Plaintiffs request that this Court consider the facts and arguments contained in their original Motion for Summary Judgment [DE 88]. In it, Plaintiffs showed that the admitted facts by Defendant already create a *prima facie* case of retaliation under the FLSA. The letter delivered by Plaintiffs' prior counsel creates a protected activity. SoMF §§ A, F, G. It is undisputed by the parties that Plaintiffs were terminated. The only question is to whether the "causation" or "link" element is fulfilled, and Plaintiffs assert that they have done so with both direct and circumstantial evidence.

> (b)(1) Direct Evidence Shows a Direct Link Between the Protected Activity and the Adverse Action

Plaintiffs have the "smoking gun" of direct evidence. Defendant's attorney, Mark Beutler, was in charge of designing and executing a plan by which Defendants would require their employees to sign arbitration agreements and collective action waivers. Supplemental Statement of Facts ("SSoF") § E. Defendants purposefully drafted the Arbitration Agreement and collective action waiver for the express purpose of stopping Plaintiffs and other employees with similar claims from exercising their right to overtime. SSoF at §§ C, F. Defendants were well aware of the existence of current claims, that the claims would be eliminated by an

arbitration agreement and class waiver.[3]  The end result was an arbitration agreement that applied to prior claims.  SSoF § D.  Defendants admit that it was mandatory – thus Defendants threatened Plaintiffs livelihood: either Plaintiffs could agree to drop their attempts to adjudicate their FLSA rights in this Court, or they find themselves without a job.  Under Goldsmith, this activity is retaliation as a matter of law.  Defendants even went beyond Goldsmith by forcing each overtime dispute to be arbitrated in a separate action – further making adjudication prohibitively unpalatable to any lawyer who might champion the employees' cause.

This is the smoking gun of direct evidence that retaliation cases rarely have the benefit of.  The McDonald Douglass analysis does not even apply or matter when there is direct evidence of retaliatory motive.

(b)(2)  Circumstantial Evidence

Plaintiffs' circumstantial evidence regarding the link between the protected activity and the termination is found in the context of the process of implementing the arbitration agreement as a whole.  A jury could find that retaliation occurred based on the circumstantial evidence of how Defendants implemented this process. Defendants were being sued by many of their employees through the Shavitz Law Group, who were trying to create a massive class action.  SSoF § A, *see* e-mail [DE 89-3].  After Shavitz Law Group revealed that more plaintiffs are seeking overtime, Defendants leapt into action and began to have the nonmanagerial staff sign the agreement.  Once the holdouts were identified, they were eliminated within a month.

Even without the direct evidence described above, this circumstantial evidence can connect the dots for a jury. Defendants cannot be granted summary judgment because a genuine issue of material fact would exist as to the pretext of Plaintiffs' termination.

---

[3] "But it will be very difficult, but perhaps not impossible, to have the arbitration agreement apply to pending litigation.  The case law is not favorable, but the following plan may work and steer around the existing bad precedent. *See* E-Mail [DE 89-12] [SoMF § C].

  c. <u>The Temporal Proximity or Lack Thereof is Irrelevant When Other Facts Support a Causal Connection</u>

Defendants point out that the discharge of employee Plaintiffs occurred months before. This is undisputed, but irrelevant. Temporal proximity is a powerful method of using circumstantial evidence to forge the link between protected activity and adverse action. <u>Raspanti v. Four Amigos Travel, Inc.</u>, 266 F. App'x 820, 823 (11th Cir. 2008); Debbie Rodman Sandler & Laura W. Brewer, <u>Retaliation Claims Under the Civil Rights Acts: Theacherous Waters for Employers</u>, 13 LAB. LAIN. 107, 107-15 (1997).

In this case, "causation" need not use the crutch of temporal proximity because a clear line of causation is delineated by the arbitration agreement, and emphasized by the correspondences between agents for Defendants about the arbitration agreement. This is explored in <u>Goldsmith</u>, which yet again is like this case. In <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261, 1278 (11th Cir. 2008) there was an eight month distance between protected activity and the termination, and in that case the distance was bridged by the arbitration agreement.

  d. <u>There is No Reason to Distinguish *Goldsmith v. Bagby Elevator Co., Inc.*</u>

Defendants ask this Court to embrace the reasoning of <u>Reheiser v. Terminix Int'l Co., L.P.</u>, 509 F. Supp. 2d 1147, (N.D. Fla. 2007) and reject and distinguish the binding precedent of <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261 (11th Cir. 2008). These two cases are consistent with each other, but produce two different results for one very critical reason: in <u>Goldsmith</u>, there was a preexisting protected activity, in <u>Terminix</u> there was not.

<u>Goldsmith</u> did not expressly refer to <u>Terminix</u> in its decision, but it discussed <u>Weeks v. Harden Manufacturing Corp.</u>, 291 F.3d 1307 (11th Cir. 2002). <u>Weeks</u>, like <u>Terminix</u>, had an employee that was discharged for refusing to sign an arbitration agreement. "In [Weeks], we

ruled that a refusal to sign an arbitration agreement was not a protected activity that could support a claim of retaliation, but we did not address an employee's refusal to sign an agreement that applied to a pending charge of discrimination." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1267-68 (11th Cir. 2008).

While it probably *should* be illegal to fire an employee for them not going along with waiving their right to a jury under the Fair Labor Standards Act – precedent found in Weeks and Terminix show that it is not.  As Goldsmith describes, retaliation exists when a protected activity is materially affected by a employer's threat of termination.  The employee in Goldsmith had protected activity, the employees in Weeks and Terminix did not.  This makes a lot of sense – in Weeks and Terminix, the employees who sued could have been any employee who was fired for not signing the arbitration agreement.  In Goldsmith, the plaintiffs could only have been an employee with a preexisting claim.

Defendants try to distinguish Goldsmith by asserting a handful of differences without describing why those differences actually distinguish the case.  Defendants might as well have said that the holding should be different because the employer in Goldsmith was an elevator company.  Goldsmith is very specific about its reasoning.  The opinion suggests that some facts are relevant based on the recitation of those facts; however, the case was also a matter of discrimination and the discriminatory motive was also at issue.

### III. CONCLUSION

Plaintiffs have shown that they have a *prima facie* case of retaliation under the FLSA in their Motion for Summary Judgment [DE 89], Opposition to Summary Judgment [DE 96], and this Opposition to the second Motion for Summary Judgment.  Defendants assert in their second Motion for Summary Judgment that this does not matter, because terminating employees for

refusing to sign an arbitration agreement is a legitimate reason.  As described above, this is not so; Plaintiffs have direct evidence of a retaliatory motive by showing facts which mirror the 11th Circuit Court of Appeals <u>Goldsmith</u> case.  This shortcuts the <u>McDonald Douglass</u> analysis, because as a matter of law it is retaliation to mandate that employees waive their right to a jury regarding claims preexisting and already notified.  At the very least, the circumstantial evidence created by the context of the arbitration agreement terminations is sufficient to create a question of fact as to *pretext* pursuant to the <u>McDonald Douglas</u> analysis which is genuinely disputed and so, must be determined by a jury.

*Wherefore Plaintiffs request that this Court deny Defendants' Motion for Summary Judgment.*

Respectfully submitted this Eighteenth day of September, 2015.

>J.H. Zidell, P.A.
>Attorney for Plaintiffs
>300 71st Street, Suite 605
>Miami Beach, Florida 33141
>Tel: (305) 865-6766
>Fax: (305) 865-7167
>
>By: <u>/s/ Elizabeth O. Hueber</u>
>Elizabeth O. Hueber
>Florida Bar No.: 0073061

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on September 18th, 2015 on all counsel or parties of record on the Service List below.

                __/s/Elizabeth O. Hueber__
                Elizabeth O. Hueber, Esq.
                Fla. Bar No. 0073061
                J.H. Zidell, P.A.
                Attorney for Plaintiff
                300 71st Street #605
                Miami Beach, Florida 33141
                Tel: (305) 865-6766
                Fax: (305) 865 – 7167

**SERVICE LIST**

Nicole M. Wall
Cole, Scott, & Kissane, P.A.
1645 Palm Beach Lakes Blvd.
2nd Floor
West Palm Beach, FL 33401
561-383-9236
Fax: 561-683-8977
Email: Nicole.Wall@csklegal.com
*Attorney for Defendants:*
*American Sales and Management Organization, LLC,*
*Eulen America, Inc.,*
*Livan Acosta*